MORRELL C. KEITH AND GUY C. BARTON, PLAINTIFFS IN ERROR, v. JOHN TILFORD, DEFENDANT IN ERROR.

1. Trespass: HERD LAW. The remedy for trespass by live stock upon cultivated lands, by impounding, notice to the owner, arbitration, etc., as provided by the act of March 8, 1871, is a cumulative and not an exclusive remedy.

2. ———: EVIDENCE. Evidence showed the market value of corn "near" the site of the destroyed crop; held, sufficient prima facie.

3. ———: ———. Evidence of the destruction of a field of corn by a herd of about six hundred cattle. Witnesses recognized the brand and ear marks of the defendants below, on about two hundred of the cattle of the herd. No evidence of any of them being unbranded, unmarked, or bearing any other brand, or mark. *Held*, sufficient *prima facie*.

4. ———: TITLE: U. S. LAND. The exclusive peaceable possession of lands, the title of which is in the United States, under a preemption filing, which had expired under the law, *held*, sufficient as against a trespasser.

ERROR to the district court for Lincoln county, to which the cause had been brought on appeal from the county court. The action was brought by Tilford for damage done to his crops by cattle of Keith and Barton. On trial in district court, before GASLIN, J., and a jury, he obtained a verdict and judgment for $100 and costs, to reverse which Keith and Barton came here upon a petition in error.

*Hinman & Neville*, for plaintiffs in error, cited *Hurford v. Omaha*, 4 Neb., 350. *Dudley v. Mayhew*, 3 N. Y., 9, *Cole v. Muscatine*, 14 Iowa, 296. *Johnston v. Louisville*, 11 Bush., 527. *State, ex rel., v. Marlow*, 15 Ohio State, 134. *Delaney v. Errickson*, 10 Neb., 499. *Hardmann v. Bowen*, 39 N. Y., 199. *Carragus v. The Board of Commissioners*, 39 Ind., 66.

*John De Lany*, for defendant in error, cited 3 Blackstone, 211. Gen. Stat., Chap. X.

COBB, J.

There is a very important question raised by the record in this case, which has not heretofore been passed upon by this court. The plaintiffs in error contend that by virtue of the act of March 8, 1871, entitled "An act for a general herd law, and to protect cultivated lands from trespass by stock," the remedy given in said act, by distress, impounding, notice, arbitration, etc., is made the

exclusive remedy in cases of trespass by live stock on cultivated lands.  [Comp. Stat., Chap. 2, Art. III.]

There can be no doubt of the correctness of the proposition, to which plaintiffs in error cite numerous authorities, that  "Where a statute confers a right and prescribes adequate means of protecting it, the proprietor of the right is confined to the statutory remedy."   But the right of every man to the uninterrupted enjoyment of the produce of his cultivated fields must, even in Nebraska, have dated further back than April 1, 1871.   While it must be admitted, that some of the language used by way of argument and illustration in the opinion of this court in the case of *Delaney v. Errickson*, 10 Neb., 492, seems to imply that prior to the passage of the act, known as the general herd law, there was no law in this state for the protection of even cultivated lands against trespass by live stock, yet, it cannot be claimed that the opinion, taken as a whole, need lead one to such a conclusion. Such certainly neither was  nor is the view of the court on that point.

Growing or standing cultivated crops have always, for most purposes, been deemed personal property, not so with growing wild grass and other natural products of the soil; and while technically the form of the action for injury to growing crops recognizes the breaking and entering of the close as of the essence of the injury, yet its object is compensation for the loss of the produce of labor, personal property, and there is little or no essential difference between it and the action of trespass for the taking and carrying away of personal goods.  The right to bring an action for an injury to, or the taking and carrying away of any species of chattels, including crops of grain, no doubt was suspended to the first settlers of Nebraska, until civil courts were organized therein for the protection of the rights of person and property, but it is difficult to conceive of a system of civil jurispru-

dence even of the crudest character which affords no pro-
tection to the cultivator of the soil in the enjoyment of
his labor.

We are of opinion therefore, that the first section of the
act of March 8, 1871, conferred no right to the people of
this state, which they did not possess before its enact-
ment. ·

The second clause of the second section did confer a
new right in giving to the owners of cultivated lands, "a
lien upon such trespassing animals," but the language of
this section is such as to leave ·it an open question
whether such lien cannot be enforced by means other than
the impounding, etc., provided for in the succeeding sec-
tions of the act. ·But we do not doubt that where it is
not sought to rely upon or enforce a lien, the owner of the
trespassing stock may be proceeded against in trespass,
as in the case at bar.   Indeed we know of no case, out-
side of admiralty, where a party, although entitled to a
lien, may not waive it and rely upon the personal respon-
sibility of the defendant.

Referring to the authorities cited by counsel for the
plaintiffs in error, it is not disputed that in order that
an injured party be restricted to a special or statutory
remedy, such remedy must be an adequate one.  To judge
of the adequacy of a remedy, a court must often take
notice of the history and condition of the country, of its
inhabitants, and of their industrial pursuits; but in this
case the evidence furnishes us sufficient data for that
purpose.

The plaintiff below was the owner and in possession of
nineteen acres of corn and one acre of sorghum.  The herd
of the defendants, consisting of about six hundred head of
cattle, ranged upon this field and destroyed the corn.  To
have pursued the special remedy, the plaintiff must have
impounded all of these cattle; that is, shut them up in a
close pen.  Or putting the most liberal construction upon

the language of the statute, he must have restrained, confined and kept the cattle together in one place, until the completion of the notice, arbitration and payment of damages by the owners, or the sale of the cattle to pay such damages, which would occupy from four days to four weeks. In the meantime the cattle must be not only kept impounded, but furnished with food and water, at the ultimate cost of the owner to be sure, yet at the immediate cost of the owner of the destroyed crop. We assume that no one will consider this an adequate remedy or at all adapted to compensate the owner of the nineteen acres of corn, which the jury have valued at one hundred dollars, for the loss sustained. He must have been a capitalist to have made this remedy available.

As to the point that the evidence does not sustain the verdict, the uncontradicted testimony of the plaintiff below was, that there was nineteen acres of corn, and that it would yield from sixteen to twenty bushels per acre; that it would cost from three to four cents per bushel to gather and shell it, and that it was worth one dollar per hundred. He also testified that the corn was "near this town," North Platte, the place where the trial was held. Mr. Weary testified that he was a dealer in corn and feed in North Platte; that in 1877 corn was retailing at one dollar per hundred pounds, but by the quantity it was worth but ninety cents per hundred pounds. Nineteen acres at sixteen bushels per acre, would yield three hundred and four bushels, which at ninety cents per hundred pounds, would amount to one hundred and fifty-three dollars and twenty-one cents. From which deduct twelve dollars and sixteen cents, the cost of picking and shelling it at four cents per bushel, leaves one hundred and forty-one dollars and five cents. We think therefore, even if we reject the testimony of the plaintiff below, that the corn was worth one dollar per hundred pounds,

there was sufficient evidence. The market price of corn near the site of the destroyed crop uncontradicted or explained, is sufficient.

The witnesses only recognized the brand and ear marks of the defendants below on about two hundred, of the herd of about six hundred, that destroyed the crops. None of them saw any other owner's brand or mark on any of them, nor do any of the witnesses speak of any unbranded cattle among them, One of the witnesses on the other side speaks of another large herd being in that vicinity, but there is no suggestion that the two herds ever became mixed together.

The exclusive peaceable possession of lands, the title of which is in the United States, without even claim of title on the part of the plaintiff, is sufficient against a trespasser.

The above views render it unnecessary to comment on the instructions given or refused. For, if we are correct in our view of the case, there was no error in that respect.

The judgment is affirmed,

JUDGMENT AFFIRMED.