IN RE ESTATE OF ALBERT W. HILL, ALSO KNOWN AS
A. W. "BABE" HILL, DECEASED.
W. N. NEFF, PERSONAL REPRESENTATIVE OF THE
ESTATE OF ALICE M. HILL, DECEASED, APPELLANT, V.
MARILYN HILL SUMMERLEE ET AL., PERSONAL
REPRESENTATIVES OF THE ESTATE OF ALBERT W. HILL,
DECEASED, APPELLEES.

335 N.W.2d 750

Filed June 24, 1983. No. 82-165.

Cline, Williams, Wright, Johnson & Oldfather, for appellant.

Nicholas J. Lamme of Yost, Schafersman, Yost, Lamme & Hillis, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

McCOWN, J.

This is an appeal from a judgment of the District Court affirming an order of the county court of Dodge County denying a widow's petition to take an elective share of her husband's estate.

Albert W. Hill and Alice Madden were married in November 1977. At the time of the marriage Albert

was 65 and Alice was 64 years old. Albert had been a widower since 1939 and had one living daughter. Alice had been divorced since 1951 and had three living children. Albert and Alice had been going together "as a couple" since the early 1950s. Albert had been active in a number of business activities during his lifetime and had extensive personal investments. Alice had been employed at a bank immediately prior to their marriage and also had assets of her own.

Shortly prior to the marriage Albert and Alice executed a prenuptial agreement in which the parties agreed that "all properties of any name or nature, real, personal or mixed, wherever situated, belonging to the party of the second part [Albert] before the marriage, shall be and remain forever, his personal estate, and this shall include all interest, rents and profits which may in time accrue or result in any manner from increase in value." Virtually the same language was used with respect to the property owned by Alice.

The agreement also provided: "Nothing in this agreement shall prevent either party from providing or giving to the other property of any kind in their Last Will or Codicil to a Will or by trust or by insurance."

The agreement stated: "This agreement is entered into by each party with a full knowledge on the part of each as to the extent and probably [sic] value of the estate of the other, and of all the rights conferred by law upon each in the estate of the other by virtue of such proposed marriage."

Albert died testate on December 7, 1980, leaving an estate valued at approximately $1 million. His will established a testamentary trust of $130,000 for the benefit of Alice and gave her an unrestricted power of appointment of the corpus at her death.

On May 25, 1981, Alice filed a petition to take an elective share of Albert's estate. Four days later Alice died, leaving an estate valued at approxi-

mately $300,000. In her will she exercised the power of appointment given to her in her husband's will and appointed the property to her three children.

The personal representatives of Albert's estate filed objections to Alice's petition to take an elective share, on the ground that the prenuptial agreement constituted a waiver of Alice's right to take an elective share of Albert's estate.

At the hearing in the county court Charles H. Yost testified that he had been the attorney and personal friend of both Albert and Alice for many years. Yost testified that both of them approached him in 1977 before their marriage and requested that he prepare a prenuptial agreement. At the time they were discussing the prenuptial agreement Yost was of the opinion that Albert was worth approximately $1 million and that Alice's personal estate was approximately $50,000. Yost testified that during at least one of the discussions which preceded the execution of the prenuptial agreement, Albert stated in the presence of Alice that he was worth between three-quarters of a million and a million dollars.

Yost testified that he specifically discussed the right of electing against the will and the effect of the prenuptial agreement on such rights. He testified that he discussed with both of them the ramifications of such an election and that, in his opinion, both fully understood. On direct examination by counsel for Alice's estate Yost testified that both Albert and Alice expressed to him on more than one occasion that neither of them wanted their families to have the property of the other and that each of them wanted his or her own property to go to his or her children.

At the conclusion of the hearing the county court found that the prenuptial agreement of November 22, 1977, was valid; that there was fair disclosure of the probable value of the assets of each party; and that Alice voluntarily and knowingly executed the agreement, fully understanding its nature and the

probable value of the assets of the estate of Albert. The county court therefore entered its order and judgment overruling the petition to take an elective share.

The personal representative of Alice's estate appealed to the District Court. On January 11, 1982, the District Court affirmed the judgment and order of the county court and this appeal followed.

The appellant, the personal representative of the estate of Alice Hill, contends that Charles H. Yost should not have been permitted to testify as to the expressed intentions of Albert and Alice, on the ground that such testimony was an attempt to vary the terms of the written agreement in violation of the parol evidence rule. We disagree.

The critical testimony was evidence of the circumstances surrounding the execution of the prenuptial agreement rather than an effort to vary or contradict its terms. In any event, the appellant's counsel himself originally elicited the evidence to which he now objects by inquiring on direct examination of Yost, his own witness, as to what was discussed by Albert and Alice in their meetings with Yost before executing the prenuptial agreement. Counsel only objected to such testimony when it was repeated during cross-examination. The subject matter had already been introduced without objection and there was no valid reason to restrict cross-examination.

A party may, by his acts or omissions, waive, or be estopped to make, objections to the admission or exclusion of evidence. Such waiver or estoppel may arise from failure to object, from acts done or omitted before the evidence is offered, as by failure to object to previous similar evidence, or from some affirmative act done after the ruling on the evidence. *Anson v. Fletcher*, 192 Neb. 317, 220 N.W.2d 371 (1974).

Error cannot be predicated on the admission of testimony when testimony of the same nature was

previously admitted without objection. *Breiner v. Olson*, 195 Neb. 120, 237 N.W.2d 118 (1975).

The appellant cannot now complain of testimony which he elicited and to which he made no objection until the testimony was repeated on cross-examination.

The appellant also argues that the prenuptial agreement is invalid because there was no fair disclosure, and that even if the agreement is valid it does not operate as a waiver of the right to take an elective share.

Neb. Rev. Stat. § 30-2316 (Reissue 1979) provides in relevant part: "The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement or waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of all rights (or equivalent language) in the property or estate of a present or prospective spouse . . . is a waiver of all rights to elective share . . . in the property of the other and a renunciation . . . of all benefits which would otherwise pass to him from the other by intestate succession . . . ."

Although Nebraska has not yet defined what constitutes "fair disclosure" under that section of the Nebraska Probate Code, other states have done so. In *In re Estate of Lopata*, 641 P.2d 952, 955 (Colo. 1982), the court said: "Fair disclosure is not synonymous with detailed disclosure such as a financial statement of net worth and income. The mere fact that detailed disclosure was not made will not necessarily be sufficient to set aside an otherwise properly executed agreement. Where the agreement was freely executed, the fact that one party did not disclose in detail to the other party the nature, extent, and value of his or her property will not alone invalidate the agreement or raise a presumption of fraudu-

lent concealment. [Citations omitted.] Fair disclosure contemplates that each spouse should be given information, of a general and approximate nature, concerning the net worth of the other. Each party has a duty to consider and evaluate the information received before signing an agreement since they are not assumed to have lost their judgmental faculties because of their pending marriage."

The evidence in the case at bar is virtually undisputed and establishes without serious question that the parties made a fair disclosure of the value of their respective properties and each had general knowledge of the nature and extent of the other's property and a full understanding of the nature and effect of the agreement.

Although the prenuptial agreement does not use the word "waiver," the language clearly expresses the intent to bar and waive all rights of each party to the estate of the other. The language specifically authorizing gifts by will, trust, or insurance clearly confirms the intent to waive all rights in the estate of the other. The language is at least "equivalent language" and constitutes a waiver in fact.

The judgment of the District Court affirming the order of the county court was correct and is affirmed.

AFFIRMED.