LOWELL FOLAND, APPELLANT AND CROSS-APPELLEE, V. GERRY
MALANDER, APPELLEE AND CROSS-APPELLANT.
381 N.W.2d 914

Filed February 21, 1986.   No. 84-630.

John H. Albin of Treadway, Bird & Albin, P.C., for appellant.

Daniel M. Placzek of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an action brought by plaintiff for injuries he suffered when he was struck and trampled by defendant's bull. Plaintiff sought special damages for medical expenses and extra help hired during his recovery, and general damages for pain and suffering and permanent injury to his hand. Defendant denied any liability for plaintiff's injuries and affirmatively alleged assumption of risk and contributory negligence as bars to plaintiff's recovery. The trial court overruled plaintiff's motion for a directed verdict on the basis of strict liability but directed a verdict of negligence as a matter of law against defendant. The jury then returned a general verdict for defendant.

The incident giving rise to this suit occurred on December 29, 1980. On that date Gerry Malander, the defendant in this case, along with some family members and a hired hand, Sid Troxel, was driving a herd of approximately 80 cattle along a public road in Nance County. The herd included a 1,700-pound bull. The Malanders and Troxel were on horseback. As the drovers passed the land of Lowell Foland, one cow and the bull left the herd and proceeded toward Foland's corral. The bull then entered the corral by jumping over an electric gate.

Plaintiff, defendant, and Troxel discussed removing the bull from the corral. As plaintiff waited near the gate, defendant and Troxel entered the corral on horseback in an attempt to drive the bull out of the corral. They were successful in driving the bull toward the gate, but the bull was followed by several of plaintiff's calves. After the bull had cleared the gate, but before the calves had done so, plaintiff stepped approximately 15 feet behind the bull, and in front of the calves, in an attempt to direct the calves back into the corral. With his back toward the bull, plaintiff made a waving motion with his hands toward the calves. The bull then turned toward plaintiff, charged him, struck him, ran over him, and stepped on his left hand.

Testimony from the record indicates that neither defendant nor his hired hand were in a position to prevent the calves from leaving the corral. Testimony also revealed that the bull was not restrained while being driven, even though defendant had a choice of methods available to him to restrain the bull.

Plaintiff alleged the following in his petition:

That Defendant was guilty of the following acts of negligence which were the proximate cause of the injuries and damages to Plaintiff: (a) that Defendant knew or should have known that said Simmental bull had a dangerous and vicious propensity, in that it had a propensity to attack people on numerous prior occasions, (b) that Defendant did not have said Simmental bull under proper restraint and had not taken any precautions to prevent said bull from attacking Plaintiff or other persons, (c) that Defendant permitted said Simmental bull to trespass on the Plaintiff's property where the attack on the Plaintff [sic] took place, (d) that Defendant failed to warn the Plaintiff in any manner of the dangerous and vicious propensities of said Simmental bull.

Plaintiff also alleged injuries, that the defendant owned the bull, that the bull was of a vicious nature and disposition which was known or should have been known by defendant, and that the bull was driven along the county road and was not restrained in any manner.

In his answer defendant admitted owning the bull and denied negligence. He further claimed that plaintiff assumed the risk of his actions and that plaintiff was negligent in provoking the bull by his actions.

As stated above, the trial court directed a verdict of negligence against defendant. The jury was not instructed on a theory of strict liability.

Plaintiff assigns the following as error: (1) The trial court erred in failing to order a new trial on the grounds that the verdict was not supported by the evidence and was contrary to law; (2) The trial court erred in failing to direct a verdict for the plaintiff on the basis of strict liability; and (3) The trial court erred in failing to give the jury plaintiff's proffered instructions on the rescue doctrine and strict liability.

In order to determine whether plaintiff's assignments of error have merit, it was necessary to make a historical survey of relevant cases. Cases with similar facts have been pled and decided on several theories. These include (1) liability for the trespass of an animal which is not considered dangerous, (2) liability for the trespass of an animal which is vicious, although

the class of animals is not considered vicious, and (3) liability for the trespass of an animal which belongs to a class of animals considered vicious by nature. Some of these cases have been brought under statutory strict liability, some under common-law strict liability, and others under various negligence theories. In some cases the animals were clearly trespassing on the lands of others, in others they strayed from the roadway where they were lawfully being driven, and in others they caused injuries while they were in a place where they were entitled to be.

The following statutes, known as herd laws, are relevant in this action.

The owner of any stallion, jack, bull, buck, or boar shall restrain the same, and any person may take possession of any such animal running at large in the county in which such person resides, or in which he occupies or uses real estate. He shall give notice thereof to the sheriff or any constable in the county in which such animal is taken, who shall give notice to the owner of such animal, if known to him, by delivering a written notice to said owner, or leaving the same at his usual place of abode, giving a description of the animal so taken. If such owner does not appear within ten days after such notice to claim his property and pay costs and damages if any, then the sheriff or constable shall sell the animal so taken, at public auction to the highest bidder for cash, having given twenty days' notice of the time and place of sale, with a description of the property, by publishing the same in a newspaper of general circulation in the county, or if there is no such paper, by posting such notice in three public places in the township or precinct in which such animal was found at large. Out of the proceeds of such sale he shall pay all costs and any damages done by such animal, to be ascertained and determined by him, and the sheriff or constable shall pay the remainder, if any, into the county treasury for the use of the county. If legal proof is made to the county board by the owner of such animal of a right thereto at any time within one year of the sale, the county board shall order the proper amount to be paid to

the owner by its warrant drawn for that purpose. If the owner, or any person for him, on or before the day of sale shall pay the costs thus far made and all damages, to be determined by the sheriff or constable if the parties cannot agree, and make satisfactory proof of his ownership, the sheriff or constable shall release the animal to him; *Provided*, this remedy shall not be construed as a bar to any suit for damages sustained and not covered by the proceeds of the sale as hereinbefore provided.

Neb. Rev. Stat. § 54-304 (Reissue 1984).

Any person owning or having charge of any drove of cattle, horses or sheep, numbering one head or more, who shall drive the same into or through any county of Nebraska of which the owner is not a resident, or landowner, or stock grower, and when the land in said county is occupied, it shall be the duty of such owner or person in charge of such horses, cattle or sheep to prevent the same from mixing with the cattle, horses or sheep belonging to the occupiers. The owner shall also prevent the drove from trespassing on such land as may be the property of the actual occupier, or may be held by him under a preemption, or a leasehold right, and used by him for the grazing of animals, growing hay or timber, or other agricultural purposes, or doing injury to the ditches made for irrigation of crops.

Neb. Rev. Stat. § 54-305 (Reissue 1984).

The owners of cattle, horses, mules, swine, and sheep in this state, shall hereafter be liable for all damages done by such stock upon the cultivated lands in this state as provided by section 54-402 if the damages to the cultivated lands are not the result of negligent or willful damage to the division fence by the person claiming damages to the cultivated lands.

Neb. Rev. Stat. § 54-401 (Reissue 1984).

All damages to property so committed by such stock running at large shall be paid by the owners of such stock; and the person, whose property is so damaged thereby, may have a lien upon such trespassing animals for the full amount of damages and costs, and may enforce the

collection of the same by the proper civil action. Neb. Rev. Stat. § 54-402 (Reissue 1984).

We will now examine selected Nebraska cases. In the case of *Glidden v. Moore*, 14 Neb. 84, 15 N.W. 326 (1883), the owner of a bull lariated the bull near a road. The owner knew the bull had attacked persons several times in the past. On this occasion the bull attacked and killed an elderly man who was traveling on the road. The bull's owner was found liable on a negligence theory. The court stated that it would have allowed evidence of contributory negligence on the part of plaintiff as a defense.

A case involving trespassing cattle considered whether furrows planted around haystacks rendered the land within the furrows cultivated land within the meaning of Nebraska statutes known as herd laws. *Brown v. Sylvester*, 37 Neb. 870, 56 N.W. 709 (1893).

Two years later, the herd laws again were raised in the Nebraska Supreme Court when this court was called upon to determine the applicability of the herd laws to cities of the metropolitan class. *Lingonner v. Ambler*, 44 Neb. 316, 62 N.W. 486 (1895).

In *Randall v. Gross*, 67 Neb. 255, 93 N.W. 223 (1903), this court considered an action in replevin for three hogs. The court interpreted the herd laws to mean that the owners of stock would be liable for damages done by such stock on cultivated lands. The court commented:

At common law the owner of live stock was bound, at his peril, to keep his stock within his own enclosures, and was liable .for injuries committed by them while trespassing upon the lands of others, and such stock were liable to be impounded damage-feasant by the owner of the lands on which they were found trespassing . . . .

*Id*. at 257, 93 N.W. at 223.

Another case involving the herd laws is *Angus Cattle Co. v. McLeod*, 98 Neb. 108, 152 N.W. 322 (1915). This was an action in replevin for cattle which trespassed on defendants' land. The statutes were held to apply to land which had previously been planted to corn, with the stalks of the corn being used for forage.

The case of *Fiene v. Robertson*, 184 Neb. 668, 171 N.W.2d 179 (1969), involved an action to recover for hay stacked on plaintiff's premises and consumed by defendant's cattle. The court stated:

> At common law the owner of livestock was liable for any damage done by it, while trespassing upon the lands of others, whether such lands were cultivated or uncultivated. . . .
>
> Under existing statutes such liability is limited to trespass upon cultivated lands. . . . To render the owner liable for a trespass upon uncultivated lands, a willful trespass must be alleged and proven.

*Id.* at 669, 171 N.W.2d at 181. The court went on to say that in this case the trespass was upon cultivated lands and it was immaterial whether the trespass was willful or negligent. The court concluded: "Under the statutes, as under the common law, the burden of restraining domestic animals is placed squarely upon the owner, and ordinarily no excuse for failure to restrain them is recognized." *Id.* at 670, 171 N.W.2d at 181.

An action for damages caused by the impregnation of plaintiff's purebred Hereford cow by defendant's trespassing purebred Angus bull was brought in *Fuchser v. Jacobson*, 205 Neb. 786, 290 N.W.2d 449 (1980). The small claims court judge found for the plaintiff, as did the district court judge. Upon the defendant's appeal we affirmed the judgment of the district court.

After reviewing earlier cases we stated: "Nebraska's statute on liability for damages to owners of trespassing animals modifies the common law liability only in that it restricts liability to trespasses on 'cultivated lands.' " *Id.* at 789, 290 N.W.2d at 451; § 54-401.

> Further, Nebraska statutes specifically provide that the owner of any bull (and other specified male animals) shall restrain the same and shall be liable for damages for failure to do so. The duty imposed by this statute is not restricted to "cultivated lands." § 54-304, R.R.S. 1943.
>
> Under the statutes, as under the common law, the

burden of restraining domestic animals is placed squarely upon the owner and ordinarily no excuse for failure to restrain them is recognized. . . .

Although, obviously, an argument might be made for strict liability in this case under the Nebraska statutes, it is not necessary to make that decision here. As previously noted, since this case was tried on very informal pleadings from Small Claims Court, no specific theory of recovery was alleged, and any theory of recovery supported by the evidence is sufficient for affirmance.

The statutes in question impose a duty regarding restraint of bulls and trespassing cattle. Violation of the duty imposed by statutes is evidence of negligence and may be considered as such by the trier of facts. . . .

Here, in addition to the violation of duties required by statute, there was evidence which could show negligence on the part of the defendant . . . .

205 Neb. at 790-91, 290 N.W.2d at 451-52.

*Fuchser* is the most recent statement of the law of this state concerning trespassing animals and, specifically, trespassing bulls. It is, however, a case involving damage to property rather than personal injury.

Plaintiff urges us to compare §§ 54-304, 54-401, and 54-402 with Iowa Code Ann. §§ 188.2 and 188.3 (West 1969). The statutes of the two states are similar, but this does not help us in settling the issue in this case.

Of the Nebraska statutes known as herd laws, legislative history is available only for a recent addition to § 54-401. The other statutes were passed in the last century, and the deliberations leading to their passage have not been preserved. The case of *Keith & Barton v. Tilford*, 12 Neb. 271, 11 N.W. 315 (1882), does, however, shed light on the question of the scope of coverage of the herd laws and their purpose. It is clear from reading this case that the act of March 8, 1871, entitled "An act for a general herd law, and to protect cultivated lands from trespass by stock," was not passed for the protection of *persons* from injury. *Id.* at 272, 11 N.W. at 315. Further, the court held that the remedy provided for in the statute was not an exclusive remedy for damages to cultivated land by trespassing stock.

We are called upon here to determine whether these statutes, particularly § 54-304, govern us in this case. Using common sense and logic, as well as the holding in *Keith & Barton*, we conclude that they do not. The statutes, called the herd laws, are interrelated; that is clear from reading them. The fact that "cultivated land" is distinguished from uncultivated land by statute and in case law is significant. Whether a trespassing animal damages property upon land that is cultivated or fenced or whether such animal merely wanders around on unimproved land is a valid distinction to make. However, it would not make sense for such a distinction to apply to personal injuries caused by a trespassing animal. If a person stands in his fenced corral, or his fenced garden behind his house, or his child's unfenced playground, or his unfenced, uncultivated meadow or field, he is lawfully in a place he is entitled to be. Further, he should be afforded just as much protection from trespassing animals which could harm him when standing in his meadow as when standing in his garden. We conclude that the herd laws pertain to damage to property and do not alter the common-law liability for personal injuries caused by trespassing bulls.

Authorities have described the development of cases of harm caused by trespassing livestock as proceeding in two distinct directions.

> That the substantive law affecting the liability of possessors of domestic animals such as livestock for harm caused by their animals has developed along two main lines, with one development taking place as a branch of the law of "trespass" under which damages caused by animals intruding upon another's premises were recoverable as an "aggravation" of the trespass under the old common-law writ of "trespass quare clausum fregit," while the other development took place under the principles surrounding the action of "trespass on the case" and allows recovery for the tort wrong, or negligence of the possessor of the offending animals, was pointed out in § 2, supra, discussing the various theories of liability upon which livestock possessors have been held answerable for injury or death caused by their animals intruding upon the property of other persons.

Annot., 88 A.L.R.2d 709, 749 (1963).

Some cases make a distinction between actions which are brought directly for the damages sought and actions for trespass quare clausum fregit, in which the particular injuries for which recovery is sought are alleged in aggravation of the trespass, holding that scienter must be shown in the former class of actions, but not in the latter. In the latter case the breaking and entering the close is the gist of the action, and the mischief or injury resulting therefrom to the person or property of the plaintiff is alleged and recovered on by way of aggravation of the trespass. Thus, if a bull breaks into an inclosure of a neighbor, and there gores a horse or mule to death, his owner is held liable in an action of trespass quare clausum fregit, in which the value of the horse or mule is deemed to be the just measure of damages.

In an action of, or upon the theory of, trespass quare clausum fregit, negligence of the owner of the animal is not a necessary element. However, the owner of a trespassing animal is liable only for proximate results, and not for all conceivable results, of the trespass.

4 Am. Jur. 2d *Animals* § 112 at 361-62 (1962).

The record in this case contains evidence establishing that the bull was being driven along the road before injuring the plaintiff. This circumstance is particularly addressed in the legal literature.

One exception to the common law rule which the courts were compelled to recognize early was the case of animals straying from a highway on which they were being driven lawfully. While the owner would be liable for any negligence in failing to control them, or to pursue them promptly and bring them back, the privilege to make use of the highway to move them from one place to another involves, as a more or less inevitable incident, immunity as to any casual trespass on adjoining lands by the way. But the privilege extends only to property immediately abutting on the highway, and not to any lands removed from it, upon which the cattle may trespass once they have strayed from the road.

Prosser and Keeton on The Law of Torts, *Animals* § 76 at 540 (5th ed. 1984).

While it may not be unlawful or negligent to drive domestic animals along a public highway, the person or owner doing so must use that degree of diligence and care which the nature of the animal and the circumstances require, and if, by reason of a failure to do so, the animal does any mischief, he and the owner are liable without proof of scienter.

3A C.J.S. *Animals* § 183 at 680-81 (1973).

*c.* The privilege to drive livestock along the highway must be exercised with reasonable care. Although the rule stated in this Section protects the possessor of the livestock from the strict liability stated in § 504, it does not protect him from liability for harm resulting from an intrusion resulting from his failure to exercise reasonable care in driving his livestock or in failing to remove them from the abutting land upon which they have strayed.

*d.* If the possessor fails to exercise reasonable care to prevent his livestock from straying upon land abutting on the highway or to remove them after they have so strayed, he is subject to liability not only to the possessor of the abutting land for their intrusion and for harm done to any of his legally protected interests but also to members of his household for harm done to their persons or chattels.

Restatement (Second) of Torts § 505 at 9 (1977).

In the instant case it is clear that Malander's bull strayed from land abutting on the highway when it entered Foland's fenced corral. Thus, the trespass could not be characterized a "casual" trespass.

After carefully considering the statutes and the case law, we hold that an action for the infliction of personal injury by a trespassing bull upon an occupier of land may be brought on a theory of negligence, but not on a strict liability theory. The defendant in this case drove his bull along a public road without restraining the bull in any manner. No matter how usually docile a particular bull may be, one cannot rely on it to always remain so. Although not unlawful, there are obvious dangers to driving a bull without restraint.

The plaintiff in this case clearly pled negligence on the part of the defendant. Plaintiff's assertion that the verdict was unsupported by the evidence is without merit. The jury returned a general verdict for the defendant after being instructed on the defenses of assumption of risk and contributory negligence. In order to prevail on the defense of assumption of the risk, the burden is upon the defendant to prove the voluntary character of exposure to the risk, knowledge and appreciation of the danger on the part of the plaintiff, and that the injury was a proximate result of the danger. 65A C.J.S. *Negligence* § 174(2), (3), and (4) (1966); *Schmidt v. Johnson*, 184 Neb. 643, 171 N.W.2d 64 (1969). One who assumes a risk in this manner is precluded from recovery for an injury resulting therefrom. *Hess v. Holdsworth*, 176 Neb. 774, 127 N.W.2d 487 (1964). Contributory negligence is conduct for which the plaintiff is responsible, amounting to a breach of the duty which the law imposes on persons to protect themselves from injury. 65A C.J.S. *Negligence* § 116 (1966). It is an affirmative defense, and the burden of proving it is on the party asserting it. *Cawthra v. Shackelford*, 176 Neb. 147, 125 N.W.2d 186 (1963).

The evidence in this case clearly supports a finding by 12 jurors that plaintiff assumed a risk or was contributorily negligent when he turned his back to the bull. The jurors had heard testimony that plaintiff normally kept bulls around his farm, that he normally did not turn his back on a bull, but that he did turn his back on defendant's bull in an effort to keep his calves from leaving the corral. Therefore, the trial court did not err in refusing to order a new trial.

Plaintiff's second assignment of error is that a verdict should have been directed on the basis of strict liability. Plaintiff perhaps attempted to plead strict liability when he alleged that defendant permitted the bull to trespass on plaintiff's property. We have determined that an owner of a bull is not strictly liable for the personal injuries caused another. The assignment is without merit.

Finally, plaintiff's last assignment of error is that the trial court erred in failing to give the jury plaintiff's proffered instructions on the rescue doctrine and strict liability. Strict

liability has been dealt with above. With regard to the rescue doctrine, "A person is not relieved of the duty to exercise ordinary care for his own safety by the fact that his own or another's property is in imminent danger of loss or injury arising from the negligence of a third person." 65A C.J.S. *Negligence* § 125 at 86 (1966). However, it is also a well-established rule that "when one is required to act suddenly and in the face of imminent danger, he is not required to act as though he had time for deliberation and the full exercise of his judgment and reasoning faculties." 65A C.J.S. *Negligence* § 123 at 78 (1966); *Watson Bros. Transp. Co. v. Jacobson,* 168 Neb. 862, 97 N.W.2d 521 (1959). The jury was properly instructed.

Finding no reversible error in this case, we affirm.

AFFIRMED.

HASTINGS and GRANT, JJ., concur in the result.