ARDITH R. MANDERY, APPELLANT, V. CHRONICLE BROADCASTING COMPANY, A NEVADA CORPORATION, APPELLEE.
RICHARD MANDERY ET AL., APPELLANTS, V. CHRONICLE BROADCASTING COMPANY, A NEVADA CORPORATION, APPELLEE.

423 N.W.2d 115

Filed May 6, 1988.   No. 85-978.

Eugene P. Welch and David M. Woodke of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellants.

Peter C. Bataillon and Robert M. Slovek of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

In consolidated cases, Richard Mandery and his wife, Ardith, appeal from judgments on verdicts for Chronicle Broadcasting Company, doing business as WOWT Television Station, Channel 6 (WOWT). Manderys filed separate lawsuits against WOWT, claiming that WOWT's negligence proximately caused bodily injury to Richard Mandery when he fell through the floor of a house owned by WOWT. A general verdict was returned for WOWT in each Mandery case. We reverse and remand for a new trial.

On February 11, 1980, Richard Mandery fell into the basement of WOWT's multiple-story house but, as the result of severe head injuries, was unable to recall anything about events

leading up to the accident and his fall.

As part of an expansion project, WOWT purchased the house in August of 1979 and hired Stitt Construction Company as the general contractor for the project, which included demolition of the house. Stitt contracted with Anderson Excavating and Wrecking Company to demolish the house. Anderson employed Mandery as a heavy equipment operator.

According to Wayne Goetz, chief engineer for WOWT, the house, at the time of WOWT's purchase, was in fairly good condition. The house was neither dilapidated nor condemned. A diagram of the house's first floor follows.

The shaded area in the diagram represents a hole in the floor of the house's living room and bedroom. The living room's east-west width is approximately 13 feet, with 2- by 10-inch wooden joists, 16 inches apart and running east-west, to support the living room-bedroom floor.

Goetz and Larry Land, another WOWT employee, were responsible for maintenance and security of the house. Land daily inspected the house and eventually discovered that transients were entering the house and starting fires. To secure the house, as Land described, WOWT had to "tear off the back porch. Virtually nailed everything shut that we possibly could, locks on the door, that type of thing."

Goetz kept the house key in his office at WOWT, where WOWT employees had unrestricted access to the key. WOWT permitted its employees to look through the house and remove any salvageable items. WOWT employees were not required to notify Goetz or Land before entry into the house or report anything removed from the house. At least 15 WOWT employees entered the house between autumn of 1979 and February 1980.

On the first Saturday of February in 1980, and with WOWT's permission, Francis Gross and Larry Roitstein, WOWT employees, entered the house to remove its wooden floor. The floor consisted of particle board, which was a composition of sawdust and wood chips glued together under pressure, and plywood. The particle board had a $3/4$-inch thickness; the plywood, $1/2$ inch. The particle board lay on the plywood, which was nailed to and supported by the joists resting on beams on the basement walls. Roitstein described his and Gross' activity after they entered the house:

> First we thought we would remove the flooring from the top. And after realizing that it was glued and nailed and spending quite a bit of time and effort trying to remove the plywood and the particle board, we realized that wasn't going to work.
>
> So we went downstairs into the basement; and with a reciprocating saw, we cut through the 2x10's on both ends. And by either using a pry bar or a hammer or brute strength, we pulled the boards down from above.

Initially, Gross and Roitstein had intended to remove the plywood flooring as well as the joists, but particle board, nailed and glued to the plywood, made salvage of the plywood unfeasible. Gross and Roitstein then went to the basement, cut joists approximately 1 foot from each of the basement walls, and removed the joist-support for a "major area" beneath the living room and bedroom. Each of the severed and removed joists had an approximate length of 10 feet. As they severed the joists, Gross and Roitstein pried and forcibly separated the joists from the overhead plywood to which the joists were nailed. During that process, Gross and Roitstein sometimes tore apart the flooring, which they pulled into the basement. Since they did not pull all the flooring into the basement, Gross and Roitstein left some flooring with broken and jagged edges of the plywood and particle board extending over the basement. After removal of the joists, the only underlying support for the flooring was the stubs of the severed joists, approximately 1 foot long, attached to the beams on the basement walls. Roitstein acknowledged that, if a person stepped on the floor after the joists had been removed, at some point the floor "would give way." The hole in the flooring extended from the living room into the bedroom, as indicated on the diagram.

As they prepared to leave after cutting the joists, Gross and Roitstein nailed a 4- by 8-foot sheet of plywood across the doorway between the living room and vestibule. Gross could not remember whether they boarded up the bedroom's west entry from the kitchen area.

During one of his inspection rounds, Land saw the large hole in the living room floor, and later observed that the vestibule-living room doorway had been boarded up. However, there were no posted warnings concerning the floor, weakened by removal of the supporting joists. No one testified that the absence of joists was visible from any point on the house's first floor. Postaccident photographs depict the stubs of the severed joists, covered by the overhanging floor and visible only from the basement.

Mandery, an Anderson employee for 17 years, was an operator of heavy equipment used to demolish houses and other buildings. He had never been to the WOWT house before

the accident. On the day of the accident, Mandery and another Anderson employee, Ronald Wilson, had completed a job in Bellevue and then left for the WOWT house to be demolished. Mandery was supposed to enter the house and inspect every "nook and cranny" to assure readiness for demolition. The chief concern was the possible presence of children or transients in the house.

En route from Bellevue to WOWT's house, Wilson made an intermediate stop at a landfill, and estimated that he was 5 minutes behind Mandery in travel to the house. On arrival at the house late in the morning, Wilson met James McQuinn, another Anderson employee, who was assigned to demolish the house. Parked in the street in front of the house was Anderson's "lowboy," a tractor with a trailer bearing a bulldozer. Mandery had driven the lowboy from Bellevue to the WOWT house. Wilson and McQuinn walked around the house but did not see Mandery. McQuinn went to the front of the house, peered through a slit in the plywood cover on the living room's south window, and saw the hole in the living room floor. McQuinn recounted his entry with Wilson into the house via the plywood front door, passage into the kitchen area, and observation from the bedroom into the basement:

> We went over to the front door. The plywood was loose, and we just pulled it open and went in. And Ron Wilson went upstairs, and I went around through what I call the kitchen and looked down through the floor and hollered, "Ron, here he is down here." And he [Mandery] was laying [sic] on the basement floor.

There was no plywood cover or other barrier regarding the doorway between the vestibule and living room. Sunlight supplied illumination for the first level of the house. Wilson, who had descended into the basement, found the seriously injured Mandery, face down on the floor. McQuinn went outside and used a truck radio to summon help. While removing Mandery from the basement, ambulance paramedics noticed that "[t]here was debris, flooring-type debris, plywood, lying around him [Mandery]," and there were broken pieces of wood beneath Mandery's body.

In their second amended petitions, Manderys alleged

WOWT's negligence, such as failure to supervise its employees who removed structural support for the house's floor and failure to warn Richard Mandery about the floor's condition. In its answers, WOWT generally denied liability and claimed, without a factually particularized allegation, that Mandery was guilty of contributory negligence in a degree barring recovery and that Mandery had assumed the risk.

Before trial, Manderys' counsel filed a motion in limine for exclusion of testimony consisting of rumors among Anderson employees that Mandery had entered the house through a window. The court overruled Manderys' motion. Anderson employees testified about Anderson's standard procedure for entry into a house to be demolished, namely, entry through a door and use of a crowbar to open a barricaded or locked door. Apparently anticipating eventual introduction of the rumor testimony and on direct examination of Wilson, Manderys' lawyer elicited that Wilson had no firsthand knowledge about the manner of Richard Mandery's entry into the house but that there were rumors among Anderson employees that Mandery may have entered through a living room window. There was no other evidence establishing or indicating how Mandery entered the house.

At the end of a 5-day trial, in its instructions the court submitted the questions of WOWT's negligence and Richard Mandery's contributory negligence and assumption of risk. After deliberating for approximately $14^{1}/_{2}$ hours over 4 days, the jury returned a five-sixths general verdict for WOWT in each Mandery case.

## ASSIGNMENTS OF ERROR

In their appeals, Manderys maintain that the district court erred in (1) submitting the defense of assumption of risk; (2) failing to properly instruct on the issue of landowner liability; (3) overruling Manderys' motion in limine to exclude rumor evidence that Richard Mandery entered the house through a window; and (4) failing to give an instruction which, in response to Manderys' motion, would have resulted in the court's specification of Richard Mandery's conduct by which the jury might find Mandery contributorily negligent.

In substance, Manderys contend that the house's dangerous

condition was not just the hole in the living room floor, but included the weakened floor around the hole after severance of the supporting joists. The missing joists, Manderys argue, constituted a hidden and, therefore, unknown danger for Richard Mandery. WOWT submits:

> [B]y no means is the lack of floor joists a hidden danger. . . . What appellant saw, knew and [appreciated] in so walking over to the edge is unknown due to his lack of memory. It can be reasoned, however, that to a man of appellant's judgment, experience and intelligence, particularly in demolishing homes, that the presence of a hole in the floor without visible supporting floor joists was a "red flag" that the floor was unsafe. If the joists supports were present, they would have visibly [dissected] the area of the hole. If any portion of the joists is cut, that [joist] no longer acts as a support as the entire joists must be intact to give support. To then walk over to what is clearly unsupported sheeting, and stand on the edge of that sheeting is to voluntarily assume the risk of injury.

Brief for Appellee at 7.

## ASSUMPTION OF RISK VS. CONTRIBUTORY NEGLIGENCE

There is a definite demarcation between assumption of risk and contributory negligence as affirmative defenses, a delineation which may be obscured, if not totally obliterated, by incorrect application of these distinctly different defenses.

When a defendant pleads assumption of risk as an affirmative defense in a negligence action, the defendant has the burden to establish the elements of assumption of risk before that defense, as a question of fact, may be submitted to the jury. See, *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987); *Foland v. Malander*, 222 Neb. 1, 381 N.W.2d 914 (1986); *Hancock v. Paccar, Inc.*, 204 Neb. 468, 283 N.W.2d 25 (1979).

Before the defense of assumption of risk is submissible to a jury, evidence must show that the plaintiff (1) knew of the danger, (2) understood the danger, and (3) voluntarily exposed himself or herself to the danger which proximately caused the plaintiff's damage. See, *Rahmig v. Mosley Machinery Co.*,

*supra*; *Foland v. Malander, supra*; *Jensen v. Hawkins Constr. Co.*, 193 Neb. 220, 226 N.W.2d 346 (1975).

> [E]xcept where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character, or the danger involved, including the magnitude thereof, and voluntarily accepts the risk.

*Jensen v. Hawkins Constr. Co., supra* at 226, 226 N.W.2d at 350-51.

As expressed in Prosser and Keeton on the Law of Torts, *Negligence: Defenses* § 68 at 487 (5th ed. 1984):

> "Knowledge of the risk is the watchword of assumption of risk." Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he has no knowledge. Moreover, he must not only know of the facts which create the danger, but he must comprehend and appreciate the nature of the danger he confronts. "A defect and the danger arising from it are not necessarily to be identified, and a person may know of one without appreciating the other." Knowledge of the general danger may not be enough, and some courts require knowledge of the specific risk that caused the plaintiff's harm. The standard to be applied is, in theory at least, a subjective one, geared to the particular plaintiff and his situation, rather than that of the reasonable person of ordinary prudence who appears in contributory negligence. If, because of age or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it. His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.

This court has recognized that, in determining the applicability of assumption of risk, " 'The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory

negligence.' " *Makovicka v. Lukes*, 182 Neb. 168, 171, 153 N.W.2d 733, 735 (1967) (quoting from Restatement (Second) of Torts § 496 D, comment *c*. (1965)).

Concerning the defense of contributory negligence, we have stated: "One who is capable of understanding and discretion but fails to exercise ordinary care and prudence to avoid obvious dangers is negligent or contributorily negligent. [Citations omitted.]" *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 127, 403 N.W.2d 335, 339 (1987).

As we observed in *Rahmig v. Mosley Machinery Co., supra*:

> In contrast with contributory negligence (fault or breach of a duty to exercise such care as an ordinary prudent person would have exercised under the same or similar circumstances), assumption of risk " 'involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care . . . .' "

226 Neb. at 450, 412 N.W.2d at 74 (quoting from *Sandberg v. Hoogensen*, 201 Neb. 190, 266 N.W.2d 745 (1978)).

Thus, the distinction between assumption of risk and contributory negligence presents a difference which prevents interchangeable use of those defenses in a negligence action.

One does not assume the risk of an unknown or hidden danger. *Makovicka v. Lukes, supra*; *Darnell v. Panhandle Coop. Assn.*, 175 Neb. 40, 120 N.W.2d 278 (1963); *Hickman v. Parks Construction Co.*, 162 Neb. 461, 76 N.W.2d 403 (1956).

In *Darnell*, a damaged propane system had been installed by Panhandle. Immediately before the explosion resulting from escaping propane, which was the basis for Darnell's action against Panhandle, Darnells detected what they believed was the strong odor of sewer gas. However, the trial court did not submit assumption of risk. From an adverse judgment, Panhandle appealed and contended that the defense (assumption of risk) should have been submitted to the jury. This court, rejecting Panhandle's claimed error in failure to instruct on assumption of risk, stated:

> The doctrine of assumption of risk is applicable where the injured party knows that a danger exists and voluntarily assumes the risk of injury from that danger. The rule does

not apply to an unknown and hidden danger. [Citation omitted.] Assumption of risk is a defense which is independent of the defense of contributory negligence although both defenses may arise under the same set of facts. Brackman v. Brackman, 169 Neb. 650, 100 N.W.2d 774.

The evidence in this case established that Boone Darnell knew that some form of gas was present in the house. There is evidence that he thought the gas came from the sewer system. There is no evidence that he knew the source of the gas until the morning of the explosion. We conclude that the evidence was not sufficient to present a question for the jury as to assumption of risk.

175 Neb. at 52-53, 120 N.W.2d at 287.

In *Hickman v. Parks Construction Co., supra*, the plaintiff sued Parks, a contractor, on account of injuries sustained when Hickman fell into Parks' excavation on the construction site. Hickman realized that construction had taken place on the premises adjoining the place from which he was walking at night. However, Hickman was unaware of the exact nature of Parks' work on the adjoining premises and, in particular, did not know about the excavation on the adjacent tract. The trial court refused to submit assumption of risk as a defense. In affirming an award for Hickman, the court noted:

In this instance the evidence discloses that the plaintiff had no previous knowledge of the danger—the excavation.

The determination upon this assignment of error effectually disposes of the next one. By this assignment the defendant urges that the court should have instructed the jury in substance that in view of the fact that the plaintiff walked upon ground with which he was unfamiliar and that since he did not use artificial means to light his way he assumed the danger of so walking without lights.

The apparent effort was to have applied to these facts the doctrine of assumed risk. The doctrine may not be so extended. It applies to *known dangers* and not to those things from which, in possibility, danger may flow.

It is of course true that what plaintiff did or failed to do

in these respects was a matter properly for the consideration of the jury in determining whether or not the plaintiff was guilty of contributory negligence.

(Emphasis in original.) 162 Neb. at 473-74, 76 N.W.2d at 411-12.

In this case, there is no direct evidence that Richard Mandery knew about the missing joists and the resulting weakened condition of the floor. Without his knowledge concerning the weakened floor, Mandery could not understand or appreciate the nature of the impending danger. We realize that knowledge, as an aspect of conduct in question, involves a state of mind or mental process, which may be proved by circumstantial evidence. See, *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987); *State v. Caradori*, 199 Neb. 691, 260 N.W.2d 617 (1977). However, there is no evidence from which an inference might be drawn that Mandery knew of the imminent danger as he walked on the floor above the basement. Anyone walking on the house's first level was unable to see that the joists had been removed. Danger from the missing joists was unobservable and, therefore, latent. Under the circumstances, Mandery could not know that his weight, added to the weight of the floor, which was virtually only self-supported, would cause the weakened floor to collapse, plummeting Mandery into the basement. We conclude that WOWT did not produce sufficient evidence to permit the jury to find that Mandery knew of the floor's dangerous condition, understood or appreciated that dangerous condition of the floor, and voluntarily exposed himself to that danger as the proximate cause of his injuries. Therefore, the defense of assumption of risk should not have been submitted to the jury.

WOWT argues that, even if the district court erred by submitting assumption of risk, there was ample evidence for the verdicts based on Mandery's contributory negligence. However, it is impossible to determine the particular issue or defense on which the jury based its verdicts. As a result of the improper submission of assumption of risk and instruction on that defense, the jury may have found that Mandery did assume the risk, as claimed by WOWT.

Error, to be reversible, must affect a litigant's substantial

right. Neb. Rev. Stat. § 25-853 (Reissue 1985). "The submission of issues upon which the evidence is insufficient to sustain an affirmative finding is generally very prejudicial and invariably results in a second trial." *Johnson v. Anoka-Butte Lumber Co.*, 141 Neb. 851, 858, 5 N.W.2d 114, 118 (1942). See, also, *Oberhelman v. Blount*, 196 Neb. 42, 241 N.W.2d 355 (1976); *Darnell v. Panhandle Coop. Assn.*, 175 Neb. 40, 120 N.W.2d 278 (1963). The toxin from assumption of risk cannot be separated from the instructional beverage of WOWT's defenses served to the jury. Submitting assumption of risk to the jury was prejudicial to Manderys' substantial rights to a fair trial and constituted reversible error.

Having found reversible error, we nevertheless deem it necessary to discuss Manderys' other assignments of error, because those questions may recur on retrial.

## LANDOWNER LIABILITY

Manderys contend that the district court improperly instructed the jury regarding a landowner's liability. The court's instruction did not provide that Richard Mandery's knowledge of the danger did not necessarily bar recovery if the jury found that WOWT should have expected that Richard Mandery would not discover or realize the danger or would fail to protect himself, that is, WOWT should have anticipated the harm to Mandery in spite of his knowledge about the dangerous condition or the obviousness of the risk. On retrial, if the circumstances are such that WOWT should have anticipated the harm to Richard Mandery despite his knowledge of the danger and obviousness of the risk, the trial court and counsel should familiarize themselves with the principles concerning a landowner's liability, notwithstanding an injured person's knowledge of a dangerous condition on the land and obviousness of risk, expressed in *Corbin v. Mann's Int'l Meat Specialties*, 214 Neb. 222, 333 N.W.2d 668 (1983); *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983); and *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982). Instruction in accordance with the foregoing illustrative cases may become appropriate, depending on the evidence adduced on retrial.

## INTRODUCTION OF RUMOR TESTIMONY

Manderys also claim the district court erred in overruling

their motion in limine for exclusion of testimony about the rumor circulated among Richard Mandery's coemployees regarding the possible manner of his entry into the house. According to Manderys, overruling the exclusionary motion in limine resulted in Manderys' trial strategy calling for introduction of rumor testimony "lest the jurors determine that [Manderys'] failure to do so was an attempt at concealment." Brief for Appellants at 27. Generally, a litigant cannot initially introduce evidence and later complain about such evidence adduced. See, *Lincoln Co. Sheriff's Emp. Assn. v. Co. of Lincoln*, 216 Neb. 274, 343 N.W.2d 735 (1984); *In re Estate of Hill*, 214 Neb. 702, 335 N.W.2d 750 (1983); *State v. Haile*, 185 Neb. 421, 176 N.W.2d 232 (1970); *Bland v. Fox*, 172 Neb. 662, 111 N.W.2d 537 (1961). Cf. *State v. Roggenkamp*, 224 Neb. 914, 921, 402 N.W.2d 682, 687 (1987): "One who consents cannot receive an injury." Although we have concluded that assumption of risk was inapplicable as a defense to Manderys' negligence claims, assumption of risk is analogously applicable to Manderys' introduction of testimony about the rumor among Anderson employees and Manderys' subsequent appellate complaint concerning adduction of that testimony. A litigant cannot complain about self-inflicted evidential injury.

SPECIFICATION OF CONTRIBUTORY NEGLIGENCE

Neb. Rev. Stat. § 25-833 (Reissue 1985) in part provides: "[W]hen the allegations of a pleading are so indefinite and uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made definite and certain by amendment." Before trial, Manderys did not request an order that WOWT's answer specify Richard Mandery's conduct claimed to be contributory negligence. Nothing in the record indicates WOWT's specific charges of Richard Mandery's contributory negligence.

At the conference on instructions, the court indicated its intention to give instruction No. 3, which summarized the allegations in WOWT's answer, namely, WOWT's general denial of negligence, the allegation of Richard Mandery's assumption of risk, and the allegation that "Richard Mandery was contributorily negligent." Referring to the court's proposed

instruction No. 3, Manderys' counsel stated: "Plaintiff would object to Instruction No. 3, which fails to set forth specific acts of contributory negligence." The court overruled Manderys' objection and gave instruction No. 3. Manderys complain that, on account of the instruction in question, "the jury's considerations were not confined to specific issues within the case." Brief for Appellants at 32.

Quite some time ago, in *Krepcik v. Interstate Transit Lines*, 153 Neb. 98, 115, 43 N.W.2d 609, 620 (1950), this court commented on specificity in an instruction on contributory negligence:

> It is the uniform and proper practice in this state that where specific acts of negligence are charged and supported by the evidence, the trial court instructs as to the specific acts so alleged and supported. It necessarily follows that where specific charges of contributory negligence are pleaded and supported by proof the instructions should submit those specific charges to the jury for its determination.

The foregoing language in *Krepcik* has been repeated, verbatim or in substance, in subsequent opinions of this court; for example, *Enyeart v. Swartz*, 213 Neb. 732, 331 N.W.2d 513 (1983); *Herman v. Midland Ag Service, Inc.*, 200 Neb. 356, 264 N.W.2d 161 (1978); *Pool v. Romatzke*, 177 Neb. 870, 131 N.W.2d 593 (1964); and *Ripp v. Riesland*, 176 Neb. 233, 125 N.W.2d 699 (1964).

When Manderys failed to request and obtain WOWT's specification of Richard Mandery's conduct claimed to be negligence, WOWT's affirmative defense of contributory negligence remained without a definitive allegation and, therefore, was a functionally all-inclusive allegation concerning Richard Mandery's conduct. Without WOWT's specification of contributory negligence, the jury could properly consider any relevant evidence admitted on Richard Mandery's conduct which had a bearing on the issue of contributory negligence. Under the circumstances, Manderys' complaint about the court's instruction on contributory negligence is without merit.

In view of our determination that the district court committed reversible error by submitting assumption of risk,

the judgments of the district court are reversed, and these matters are remanded to the district court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

COLWELL, D.J., Retired, dissenting.

I respectfully dissent on the issue of assumption of risk, particularly the conclusion of the majority that WOWT failed to produce evidence from which the jury could find that Mandery knew of the floor's dangerous condition, that he understood or appreciated the dangerous floor condition, and that he voluntarily exposed himself to that dangerous condition as the proximate cause of his injuries.

It is the duty of the trial court to submit to the jury all material issues which are presented by the pleadings and supported by the evidence. *Munson v. Bishop Clarkson Memorial Hospital*, 186 Neb. 778, 186 N.W.2d 492 (1971). Assumption of risk is generally a question for the jury. *Kaufman v. Tripple*, 180 Neb. 593, 144 N.W.2d 201 (1966).

Before the defense of assumption of risk may be submitted to the jury, the evidence must show that the plaintiff (1) knew of the danger, (2) understood the danger, and (3) voluntarily exposed himself to the danger which proximately caused the plaintiff's damage. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987).

> The standard to be applied is, in theory at least, a subjective one, geared to the particular plaintiff and his situation, rather than that of the reasonable person of ordinary prudence who appears in contributory negligence. If, because of age or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it. His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.
>
> At the same time, it is evident that a purely subjective standard opens a very wide door for the plaintiff who is willing to testify that he did not know or understand the risk; and there have been a good many cases in which the courts have said in effect that he is not to be believed, *so that in effect something of an objective element enters the*

*case, and the standard applied in fact does not always differ greatly from that of the reasonable person. Thus, the plaintiff will not be heard to say that he did not comprehend a risk which must have been quite clear and obvious to him. . . .*

. . . .

*Since the notion of assumption of the risk rests more fundamentally upon the plaintiff's consent than upon his knowledge, it is quite possible for the plaintiff to assume risks of whose specific existence he is not aware, provided that his intent to do so is made clear. He may, in other words, consent to take his chances as to unknown conditions.* He may certainly do so expressly; and there are a few cases in which the assumption has been found by implication. Thus a guest who accepts a gratuitous ride in an automobile has been taken to assume the risk of defects in the car unknown to the driver, just as the same has been said of a licensee who enters another's premises. Workmen used to be said to assume risks of employment of which they had at least equal means or opportunities of knowledge or discovery with the employer, even though they were unaware of what they were. But if the plaintiff has consented only to a vague and general hazard, and he is unaware of the presence or nature of the specific risk that injures him, his knowledge may be insufficient for the defense to be established.

(Emphasis supplied.) Prosser and Keeton on the Law of Torts, *Negligence: Defenses* § 68 at 487-90 (5th ed. 1984).

This is an unusual case in terms of causation. No one knows exactly how the accident happened. Mandery may have inadvertently stepped or fallen into the hole. Plaintiffs' theory of recovery and their allegations of negligence and the dangers involved do not rely primarily on the presence of the hole in the floor but, rather, go to the lack of joists or support for the remaining living room flooring around the perimeter of the hole. From the record, there is a close question of plaintiffs' proof of causation.

After admitting that it is impossible to factually reconstruct the accident, plaintiffs rest their proof on these circumstances

and their inferences: there was a large hole in the living room floor; the floor joists had been cut and removed in the area of the hole; the remaining perimeter of flooring was unsupported and was claimed to be a hidden danger; plaintiff Richard Mandery gained entrance to the first floor of the house to perform his inspection job preliminary to razing the house; somehow plaintiff stepped on the unsupported perimeter flooring that gave way, throwing him into the basement, as evidenced by pieces of flooring found on the basement floor and underneath plaintiff's body. These facts and circumstances were found sufficient by the trial court to submit plaintiffs' negligence case to the jury, over the objections of the defendant.

The same circumstances that permit an inference that the floor collapsed under Mandery permit an inference that he knew the floor was unsupported because of the absence of joists but assumed the risk by walking into the room toward the hole.

The majority now decides as a matter of law that there was no evidence of assumption of risk to be submitted to the jury even though, in addition to the foregoing evidence, the record shows that Mandery had had 17 years of experience in the dangerous occupation of razing more than 1,000 houses and other buildings that were in all stages of repair and disrepair, with both known and unknown dangerous conditions; it was Mandery's job and duty to *inspect* all parts of the house inside and outside before beginning his demolition procedures; Mandery voluntarily entered the house; there was adequate sunlight in the house for Mandery to observe and appreciate the hole in the floor, the absence of floor joists, and the perimeter flooring; the remaining perimeter of flooring was a danger but not a hidden danger; and if a person stepped on the perimeter of flooring, it might give way.

After taking into account Mandery's long years of experience and his consent to voluntarily enter the house for inspection purposes, I conclude that defendant WOWT did meet its burden of proof for submitting the issue of assumption of risk to the jury. From the evidence and its inferences the jury could find that Mandery must have had knowledge of the hole in the floor and the dangerous condition of the remaining perimeter

of flooring around the hole, that Mandery understood and appreciated that dangerous condition, and that he voluntarily exposed himself to that danger, which proximately caused plaintiff's injuries. The judgment should be affirmed.

BOSLAUGH, J., joins in this dissent.