LOUISE T. HAMMOND, APPELLEE, v. THE NEBRASKA
NATURAL GAS COMPANY, A CORPORATION, APPELLANT,
IMPLEADED WITH E. I. DUPONT DE NEMOURS &
COMPANY, INC., ET AL., APPELLEES.

281 N. W. 2d 520

Filed July 17, 1979.   No. 42113.

Terry J. Grennan and Stephen A. Davis of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Richard E. O'Toole and Thomas J. Walsh of Walsh, Walentine & Miles, for appellee Hammond.

Kennedy, Holland, DeLacy & Svoboda, for appellee E. I. duPont de Nemours & Company, Inc.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

The Pathfinder Hotel, located at the corner of Sixth and Broad Streets in Fremont, Nebraska, was destroyed by an explosion and fire on January 10, 1976. Subsequent investigation disclosed that the explosion and resulting fire were caused by natural gas escaping from a main at Sixth and Broad Streets which had entered the basement of the hotel.

This action was commenced by the owner of the hotel against The Nebraska Natural Gas Company (Gas Co.) and E. I. duPont de Nemours and Company, Inc., (duPont) to recover the damages resulting from the destruction of the hotel and its contents. The jury returned a verdict against the Gas Co. in the amount of $427,500. The Gas Co. appeals from the judgment entered against it in that amount. The plaintiff does not appeal from the judgment in favor of duPont.

The principal assignments of error relate to the trial court's instructions to the jury. Other assignments relate to the sufficiency of the evidence, the ruling of the trial court on a motion in limine, and the refusal to admit certain testimony.

The Gas Co. owns and operates the gas distribution system in Fremont, Nebraska. In June 1974, the Gas Co. installed 348 feet of 2-inch plastic polyethylene pipe, manufactured by duPont and known as Aldyl A pipe, in Sixth Street between the main in Broad Street and the main in Park Street. The plastic pipe was inserted in an existing 4-inch steel main and connected at each end to existing steel mains by use of compression couplings manufactured by the Norton McMurray Manufacturing Company. Due to thermal contraction the plastic pipe pulled out of the coupling at Sixth and Broad Streets which allowed gas to escape and enter the basement of the hotel.

The plaintiff alleged that the Gas Co. was negligent in failing to install the plastic pipe in a safe and proper manner. There were other specifications of negligence but they are not important to a determination of this case.

The plaintiff alleged that duPont was negligent in failing to adequately warn and advise the Gas Co. of the dangers inherent in the use of the plastic pipe and the necessity for anchoring plastic pipe when used with compression fittings.

The Gas Co. and duPont both alleged that the plaintiff was contributorily negligent in failing to take adequate precautions after the odor of gas had been detected in the hotel building some 4 hours before the explosion and in failing to have certain fire resistant features incorporated into the building.

The defendants also filed cross-claims against each other for contribution and indemnity. The cross-claims were severed by the trial court on its own motion, and were reserved for trial at a later date.

The case was submitted to the jury upon the allegations of negligence and contributory negligence together with three forms of verdict. The verdict forms permitted the jury to find against the Gas Co., against both defendants, or against the plaintiff. The jury found against only the Gas Co.

The defendant Gas Co., as a distributor of natural gas, a dangerous commodity, was required to exercise a high degree of care and diligence to prevent injury and damage to the public from the escape of gas from its lines. It was required to exercise a degree of care commensurate to the danger involved in the transaction of its business. Whittington v. Nebraska Nat. Gas Co., 177 Neb. 264, 128 N. W. 2d 795; Fonda v. Northwestern Public Service Co., 134 Neb. 430, 278 N. W. 836.

The Gas Co. was required to have employees efficient in their line of work and to install pipes and fit-

tings of good material and workmanship and maintain them in a reasonably safe condition. Mattson v. Central Electric & Gas Co., 174 F. 2d 215 (8th Cir., 1949); Fonda v. Northwestern Public Service Co., 138 Neb. 262, 292 N. W. 712.

The duty which the Gas Co. owed to the public was a continuing one and one which could not be delegated to another. Mattson v. Central Electric & Gas Co., *supra*; Daugherty v. Nebraska Nat. Gas Co., 173 Neb. 30, 112 N. W. 2d 790.

The opportunity to acquire knowledge by the use of reasonable diligence is equivalent to knowledge. To the extent that the duty of the Gas Co. to use due care required knowledge, voluntary ignorance was not a defense. Mattson v. Central Electric & Gas Co., *supra*; Daugherty v. Nebraska Nat. Gas Co., *supra*.

In addition to the common law duties imposed upon the Gas Co., it was subject also to the standards and requirements imposed by federal and state statutes. Since at least 1971, federal law imposed the following safety standards which also had been adopted by the State of Nebraska in 1975: "192.273 (a) The pipeline must be designed and installed so that each joint will sustain the longitudinal pull-out or thrust forces caused by contraction or expansion of the piping or by anticipated external or internal loading. * * * 192.281 (a) Each plastic pipe joint must be made in accordance with written procedures that have been proven by destructive burst test to produce joints at least as strong as the pipe being joined."

The evidence indicates that the plastic pipe pulled out of the compression coupling at Sixth and Broad Streets because of a combination of factors. Plastic pipe has a coefficient of thermal expansion and contraction approximately 15 times that of steel. As a result, a decrease in temperature will cause significant contraction in the pipe, particularly where it

has been inserted in a steel main and there is no restraint other than service connections made along its length.

A compression coupling is a device that has been used in the gas industry for many years. It consists of a sleeve or barrel into which the ends of the pipes which are to be joined are inserted. When the compression nuts on each end of the coupling are tightened, gaskets are forced against the pipe, resulting in a gas tight joint. A compression coupling has very little resistance to longitudinal stress and additional precautions must be taken to avoid pull-out when such a coupling is used to join plastic pipe.

The evidence shows that these facts were well-known in the industry prior to January 10, 1976. Literature in the possession of the Gas Co. discussed the problem and warned of the hazard involved in the use of compression couplings to join plastic pipe. The Norton McMurray Company and the Dresser Company, which manufactured compression couplings, had developed special fittings to be used for joining plastic pipe. DuPont itself manufactured a special "transition coupling." A newsletter published by the duPont representative, Jack Wielar, in September 1975, and supplied to the Gas Co., described a system for anchoring plastic pipe to avoid a pull-out from a compression fitting. The Gas Co.'s own operations manual warned that plastic pipe had a high rate of expansion and contraction in comparison to metal pipe and stated that "Compression type couplings shall be strapped where there is any possibility that the coupling can move due to external or internal thrusts."

On November 29, 1974, the Gas Co. had experienced a pull-out of 2-inch Aldyl A pipe from a standard compression coupling. In January 1975, Wielar and the president of the Gas Co. discussed a pull-out at a neighboring utility. On January 9, 1976, the day before the explosion, a pull-out caused by thermal

contraction occurred in downtown Fremont.

The evidence was clearly sufficient to support a finding that the coupling installed by the Gas Co. on its main at Sixth and Broad Streets had not been installed in a safe and proper manner. There was a dispute in the evidence as to what advice and instruction the Gas Co. had received from duPont in regard to the use of compression couplings with plastic pipe. Since the duty of the Gas Co. could not be delegated, any negligence on the part of duPont was not a defense as between the plaintiff and the Gas Co.

The allegations of contributory negligence at most presented a question for the jury. There is no evidence as to how the absence of certain fire resistant features in the building contributed to the loss. The evidence shows that the plaintiff's employees attempted to contact the Gas Co. when it became apparent that a serious gas problem existed. Any delay in taking necessary precautions was attributable in a large part to the failure of the Gas Co. to have adequate emergency procedures and a failure to respond promptly to the calls from the plaintiff's employees.

The Gas Co.'s theory of the case was that it had relied solely upon warnings and instructions which it had received from duPont concerning the use of Aldyl A pipe with standard compression couplings. The Gas Co.'s principal objection to the instructions to the jury was that the trial court failed to adequately present this theory of the case to the jury.

As stated previously, the Gas Co.'s duty to the public was nondelegable and any negligence on the part of duPont with respect to warnings or instructions to the Gas Co. concerning the use of standard compression couplings with Aldyl A pipe would not be a defense as between the Gas Co. and the plaintiff. The facts concerning the danger of pull-out if standard compression couplings were used to join

plastic pipe were well known throughout the industry. The Gas Co. could not avoid its responsibility to the public by relying upon information alleged to be erroneous and supplied by duPont.

There was no defect in the pipe supplied by duPont or the coupling supplied by Norton McMurray Company. The difficulty lay in the fact that the standard compression coupling by itself would not withstand the longitudinal stress caused by thermal contraction of the pipe, and some type of anchoring was required to prevent a pull-out.

By instruction No. 20 the jury was advised that its verdict should be for duPont if the Gas Co. had actual knowledge that additional precautions should have been taken in designing and installing the joint in the main at Sixth and Broad Streets. This was a correct statement of the law. Any negligence on the part of duPont in failing to adequately instruct and warn the Gas Co. could not have been a proximate cause of the accident if the Gas Co. had actual knowledge of the matter.

We have examined the other instructions and requested instructions and find no merit in any of the assignments of error relating to them.

The Gas Co. complains that a form of verdict should have been submitted which would have permitted the jury to find in favor of the Gas Co. and against duPont. Under the facts and circumstances of this case, there could be no finding for the plaintiff and against duPont alone because the duty of the Gas Co. was nondelegable. Unless the leak was caused by the installation of the compression coupling without adequate additional precautions to avoid pull-out from thermal contraction, any failure of duPont to warn and instruct the Gas Co. in that regard could not be a proximate cause of the accident. The verdict in favor of the plaintiff and against only the Gas Co., under the circumstances in this case, was equivalent to a finding for duPont.

The entry of judgment for duPont on the verdict returned was at most error without prejudice.

After the accident, on April 30, 1976, duPont published a bulletin, entitled *Pull-Out Forces on Joints in Polyethylene Pipe Systems*, which contained a detailed explanation of thermal contraction in Aldyl A pipe and measures which could be taken to prevent pull-out. DuPont's motion in limine to prevent the Gas Co. from referring to the bulletin or using it in the examination of witnesses was sustained. The Gas Co. assigns this ruling as error.

Post accident changes in warnings and instructions generally are not admissible as implied admissions of negligence if their prejudicial nature outweighs their relevance. Haysom v. Coleman Lantern, 89 Wash. 2d 474, 573 P. 2d 785.

The admissibility of such evidence generally is within the discretion of the trial court. The bulletin related primarily to the issue of duPont's alleged negligence in failing to give adequate instructions and warnings to the Gas Co. which was not a defense to the Gas Co. as against the plaintiff. The trial court could determine that the prejudicial nature of the bulletin outweighed its utility of evidence in this proceeding. See § 27-403, R. R. S. 1943.

The Gas Co. offered testimony by two deputy state fire marshals that if the joint in the main at Sixth and Broad Streets had been inspected by them before the accident, they would have approved it as being in compliance with the federal and state safety regulations as they understood them at that time. The Gas Co. contends the exclusion of this evidence was error.

The deputy fire marshals did not inspect the main and they admit that the joint in fact did not comply with the safety regulations at the time of the explosion. The fact that the deputy fire marshals would have erroneously approved the joint in the main would not excuse the negligence of the Gas Co. in

failing to comply with the safety regulations. The evidence was not relevant to any issue in the trial and was properly excluded.

We have considered the other assignments of error and find they are without merit.

The judgment of the District Court is affirmed.

AFFIRMED.