RUTH P. WILLIAMSON BY MARY E. WILLIAMSON, GUARDIAN
AND CONSERVATOR, APPELLANT AND CROSS-APPELLEE, V.
PROVIDENT GROUP, INC., APPELLEE AND CROSS-APPELLANT.

550 N.W.2d 338

Filed July 12, 1996. No. S-94-755.

Thomas J. Walsh, Sr., of Walsh, Fullenkamp & Doyle, for appellant.

Thomas M. Locher and Scott A. Lautenbaugh, of Hansen, Engles & Locher, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

Ruth P. Williamson, by her guardian and conservator, Mary E. Williamson, brought this negligence action against Provident Group, Inc., the owner and operator of Hickory Villa, an assisted living facility located in Omaha, Nebraska. Ruth Williamson suffered personal injuries in a fall that occurred while on an excursion organized by Hickory Villa. At trial, the jury rendered a verdict in favor of Provident. Williamson appeals. We conclude that there was insufficient evidence for the trial court to submit the issue of assumption of risk, and we therefore reverse, and remand for a new trial.

## FACTUAL BACKGROUND

Williamson, a 93-year-old resident of Hickory Villa, participated in an excursion organized by Hickory Villa's activities director, Art Cornelius, to DeSoto Bend Wildlife Refuge. Williamson, seven other residents, Cornelius, Tami Kologenski (a volunteer), and Steve Wessel (the son of one of the residents) traveled to DeSoto Bend in a van rented by Hickory Villa for the purpose of the trip.

While at DeSoto Bend, several of the passengers requested a restroom stop, and Cornelius stopped the van in an unpaved parking area over which crushed rock was scattered. Wessel testified that he helped Williamson out of the van and then asked her if she could make it on her own from there. He testified that she answered, "Yes, I can." After he had turned his back on Williamson to help his father, Wessel heard Williamson say "oh, oh," turned, and saw that she had fallen.

Kologenski testified that she had assisted one of the other residents out of the van and taken her to the restroom. When she was returning to the van, Kologenski observed Williamson standing alone. Kologenski testified that her view of the van became obscured by trees, but when she could see the van again, she saw that Williamson had fallen.

The testimony is in conflict as to what Cornelius was doing at the time of Williamson's fall. Kologenski claims that he was talking on the telephone, while Cornelius claims to have been checking the tires of the van on the driver's side. Wessel testified that Cornelius came from the other side of the van after Williamson's fall. However, it is uncontroverted that Cornelius did not help Williamson or any other residents get out of the van, despite his admission that it was part of his job to help them do so. Furthermore, Cornelius testified that he had never seen Williamson get out of the van without assistance.

Williamson offered testimony that her vision was poor. Although she had previously had cataract surgery on one eye, there was macular degeneration behind the cataract; therefore, the surgery was not successful. She had glaucoma in her other eye. Her daughter, Mary Williamson, testified that her mother's vision was neither better near nor better far: she just did not see very well. Additionally, the monthly reports prepared

by Hickory Villa personnel indicated Ruth Williamson's mental state as "confused." Furthermore, she adduced evidence that one of the reasons she was living at Hickory Villa was for the extra assistance the facility promised because she had fallen before and broken her arm.

As a result of her fall at DeSoto Bend, Williamson broke her right hip. She brought this action against Provident, the owner and operator of Hickory Villa, for negligence in the performance of its residential agreement. Despite Williamson's objections, the trial court included in its instructions to the jury an instruction on "assumption of risk" and used a similar phrase in another instruction. Furthermore, the court did not allow evidence of Cornelius' prior criminal conviction. The jury returned a verdict in favor of Provident. Williamson appeals.

### ASSIGNMENTS OF ERROR

Williamson assigns that the court erred in (1) submitting the defense of assumption of risk to the jury, (2) including the words "assuming the risk" in instruction No. 3A(4), (3) striking from the record the admission of Cornelius that he had been convicted of a felony in 1983, and (4) overruling her motion for a new trial.

On cross-appeal, Provident assigns that the court erred in overruling its motion for a directed verdict because Williamson failed to submit sufficient evidence to establish the standard of care for similar facilities in this locale and the breach of that standard of care.

### ANALYSIS

We begin with Williamson's first assigned error: that the trial court erred in submitting the defense of assumption of risk to the jury. Before the issue of assumption of risk may be submitted to the jury, the defendant has the burden to establish the elements of assumption of risk: the plaintiff knew of the danger, understood the danger, and voluntarily exposed himself or herself to the danger which proximately caused the plaintiff's injury. *Talle v. Nebraska Dept. of Soc. Servs.*, 249 Neb. 20, 541 N.W.2d 30 (1995); *Winslow v. Hammer*, 247 Neb. 418, 527 N.W.2d 631 (1995).

Williamson argues that Provident failed to meet its burden of establishing the elements of assumption of risk. Specifically, she argues that there was insufficient evidence to show that she knew, understood, and voluntarily exposed herself to the danger of walking unassisted on the parking lot surface.

Provident argues that Williamson assumed the risk of walking without assistance on the parking lot surface, because she knew that she had fallen before and had previously asked for assistance while on outings. Thus, Provident concludes that Williamson knew that it was a danger to walk independently and that she voluntarily assumed that risk.

The standard to be applied in determining whether a plaintiff has assumed the risk of injury is a subjective one based upon the particular facts and circumstances of the event. *Talle v. Nebraska Dept. of Soc. Servs., supra.* One does not assume the risk of unknown or hidden dangers. *Winslow v. Hammer, supra.* Thus, it was Provident's burden to show that Williamson knew that walking under these circumstances was dangerous, and that she knowingly and voluntarily exposed herself to the risk of walking on the parking lot surface.

We have reviewed the photographs that were offered into evidence and conclude that what has been described as crushed rock is more aptly described as small, crushed limestone of the type that is commonly scattered on walking paths. The evidence indicates that Williamson was 93 years old, had poor vision, and had been markedly "confused" for a long period of time. The evidence indicates that Williamson had fallen before and therefore knew that there was a general danger involved in walking, but that is not the issue here. What we must determine is whether there was sufficient evidence, either direct or circumstantial, to indicate that she knew that it was dangerous to walk unassisted at this particular time.

Provident argues that Williamson had specific knowledge of the danger presented because Wessel helped her out of the van and asked her if she could proceed alone. Furthermore, Provident argues that there is circumstantial evidence presented that Williamson was aware of the parking lot surface, saw the parking lot surface, and was aware of the possibility

that she might fall if she crossed it without assistance. We do not agree. The record does not disclose the exact location of Williamson's fall. However, our review of the exhibits indicates that the surface upon which the van parked is smooth dirt in some places, while the above-described limestone substance is scattered over other parts. There is nothing in the record to indicate that Williamson actually stepped out onto rocks, nor does the record indicate that Williamson actually felt rocks underneath her feet. We do not see how Williamson could have voluntarily exposed herself to the risk of walking on the crushed limestone when there is no evidence that she could see or feel that the walking surface was not smooth.

With regard to assumption of risk, the standard to apply is subjective—what the particular plaintiff in fact sees, knows, understands, and appreciates. *Mandery v. Chronicle Broadcasting Co.*, 228 Neb. 391, 423 N.W.2d 115 (1988). There is neither direct nor circumstantial evidence to indicate that Williamson knew of the danger presented by the parking lot surface, or that she voluntarily assumed that risk. We conclude that Provident has not met its burden of proving that Williamson knew, understood, and voluntarily exposed herself to the risk of walking. Therefore, the defense of assumption of risk should not have been submitted to the jury.

Because Provident failed to prove the elements of assumption of risk, it was error for the trial court to submit the issue to the jury. Having decided that we must reverse because assumption of risk was improperly submitted to the jury, we need not reach Williamson's other assigned errors.

On cross-appeal, Provident alleges that the trial court erred in failing to direct a verdict in its favor because Williamson did not show the standard of care exercised by similar facilities in providing similar services. Provident cites a number of cases setting forth the standard of care for professionals in the performance of professional services.

However, this appeal does not involve an allegation of professional negligence. As Williamson argues, this case was pled and tried on the theory that Provident breached its contractual duty to provide assistance to Williamson. Specifically, Williamson alleges that Provident's employee, Cornelius,

while acting within the scope of his employment as activities director, drove Williamson to Desoto Bend, parked in a parking lot upon which crushed rock was scattered, and left her unattended in the van. There is no allegation that either Cornelius or Hickory Villa breached a professional standard of care; therefore, this case should be treated as an ordinary negligence case, and no evidence of a special standard of care is necessary. Thus, the trial court correctly refused to direct a verdict in favor of Provident.

## CONCLUSION

We conclude that Provident failed to establish the elements of assumption of risk. Therefore, it was error for the trial court to submit the affirmative defense of assumption of risk to the jury. Furthermore, the trial court properly refused to direct a verdict in favor of Provident. We reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.