# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4031

_____

David Krajewski,                                  *
                                                  *
          Appellant,                              *
                                                  *   Appeal from the United States
     v.                                           *   District Court for the
                                                  *   District of Nebraska.
Enderes Tool Company, Inc., A                     *
Minnesota corporation; Northern Tool              *
& Equipment Co., a Florida                        *
corporation,                                      *
                                                  *
          Appellees.                              *

_____

Submitted:  May 17, 2006
     Filed:  December 4, 2006

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

     David Krajewski appeals the district court's[1] grant of summary judgment dismissing his products liability claims.  We affirm.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

Krajewski, a self-employed farmer, ordered a set of three high carbon steel rolling head pry bars from Northern Tool & Equipment Company in August of 1999. Northern Tool purchased these pry bars pre-packaged from the manufacturer, Enderes Tool Company, Inc. On September 18, 1999, at around 4:00 or 5:00 p.m., Krajewski was using the pry bar to repair a combine. The sun was starting to set, the lighting underneath the combine was poor, and his safety glasses were tinted, so to "be able to see what [he] was doing," he took his "safety glasses off and sat them down." (App. at 213, 295).

Krajewski was using the pry bar as a wedge in an effort to remove a sprocket so that he could replace a bearing on the auger drive. After loosening the screws holding the sprocket in place, he set the pry bar against the shaft, placing pressure on the back of the sprocket. Krajewski then struck the pry bar with a metal hammer, attempting to "create a vibration" to dislodge the sprocket. He asserts that on the first strike of the hammer against the pry bar, he saw that a piece of metal "chipped off or splintered" and a small fragment flew into his right eye.

Krajewski had not previously used the pry bar, and he removed it from the packaging just before the incident. The packaging contained a list of various "tools," and their "applications," followed by the statement "WARNING: Always Wear Safety Goggles." The pry bar was also stamped with the warning, "wear safety goggles," and there is a warning on the handle of the hammer to "wear safety goggles."

Krajewski filed suit in district court under Nebraska law based on negligence, strict liability, and breach of express warranty. The district court granted the defendants' motions for summary judgment, concluding that Krajewski "was aware of the specific danger that striking two metal tools together can cause one of them to

chip, such that he should wear safety goggles," and that when he "removed those safety goggles, he assumed the risk of eye injury."

## II.

Krajewski appeals only the district court's dismissal of his failure-to-warn claims based on theories of negligence and strict liability. He argues that he could not have assumed the risk that the pry bar would chip, because he was unaware of the specific hazard at issue. The specific hazard, he argues, "should be the pry bar's propensity to chip, not the mere possibility that it *might* chip" when struck with another metal tool such as a hammer. (Appellant's Br. at 11). He also argues that the defendants were negligent in failing adequately to warn him of this specific hazard, and that the pry bar was defective because of the inadequate warnings of this danger. He contends that there is a question of fact as to whether he would have heeded adequate warnings. We review a grant of summary judgment *de novo* and affirm where there is no genuine issue of material fact and the judgment is appropriate as a matter of law. *Young v. Pollock Eng'g Group, Inc.*, 428 F.3d 786, 788 (8th Cir. 2005).

Under Nebraska law, in a products liability case based on negligence and the duty to warn, a "manufacturer or other seller is subject to liability for failing either to warn or adequately to warn about a risk or hazard inherent in the way a product is designed that is related to the intended uses as well as the reasonably foreseeable uses that may be made of the products it sells." *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 841 (Neb. 2000) (internal quotations omitted). The question is whether a manufacturer's conduct is reasonable in view of the foreseeable risk of injury. *Id.* at 833.

To state a claim on a theory of strict liability, the plaintiff must prove that (1) the defendant placed the product on the market for use and knew, or in the exercise

of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's injury sustained while the product was being used in a way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) the plaintiff's damages were a direct and proximate result of the alleged defect. *Haag v. Bongers*, 589 N.W.2d 318, 328 (Neb. 1999). "Unreasonably dangerous" means that a product "has a propensity for causing physical harm beyond that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the foreseeable class of users as to its characteristics." *Rahmig v. Mosley Mach. Co., Inc.*, 412 N.W.2d 56, 69 (Neb. 1987). A product may be defective and unreasonably dangerous because the product was sold without sufficient warnings or instructions. *Haag*, 589 N.W.2d at 329.

Assuming that Krajewski has sufficiently alleged that the warning that he should "always wear safety goggles" may be inadequate, *but see Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 299 (8th Cir. 1996) ("Where warning is given, the seller may reasonably assume that it will be read and heeded."); *Hood v. Ryobi Am. Corp.*, 181 F.3d 608, 611 (4th Cir. 1999) ("clear and unequivocal" warnings not to operate saw with blade guard removed which, if followed, would have prevented injury held sufficient as a matter of law to appraise user that it is unsafe to operate a guardless-saw), Krajewski would still be barred from recovery if he assumed the risk of his injury. Assumption of risk may be a defense to actions brought in both negligence and strict liability. *Mandery v. Chronicle Broad. Co.*, 423 N.W.2d 115, 120 (Neb. 1988); *Rahmig*, 412 N.W.2d at 74; *Hirschman v. Maddox*, 389 N.W.2d 297, 299-300 (Neb. 1986); *Waegli v. Caterpillar Tractor Co.*, 251 N.W.2d 370, 372 (Neb. 1977). Assumption of risk ordinarily is a question for the jury, but where the facts are such that reasonable minds can draw but one conclusion, summary judgment is

proper. *Kliewer v. Wall Constr. Co.*, 429 N.W.2d 373, 380 (Neb. 1988); *Hirschman*, 389 N.W.2d at 300.

As codified in Nebraska, assumption of risk is an affirmative defense, and the defendant must show that "(1) the person knew of and understood the specific danger, (2) the person voluntarily exposed himself or herself to the danger, and (3) the person's injury or death or the harm to property occurred as a result of his or her exposure to the danger." Neb. Rev. Stat. § 25-21,185.12. The doctrine "applies a subjective standard, geared to the individual plaintiff and his or her actual comprehension and appreciation of the nature of the danger he or she confronts." *Pleiss v. Barnes*, 619 N.W.2d 825, 829 (Neb. 2000).

Under Nebraska law, the plaintiff's knowledge of a general danger or hazard is insufficient, and the assumption of risk defense requires proof that a plaintiff had knowledge of a specific danger and deliberately exposed himself to the danger. *Rahmig*, 412 N.W.2d at 74. It is not enough, therefore, that Krajewski understood, in general, that working with tools can be dangerous. *Cf. Pleiss*, 619 N.W.2d at 829-30 (awareness of plaintiff that ladders can "get shaky and fall" is simply an acknowledgment of the general danger involved in using ladders and does not assume the risk of the specific danger that an aluminum ladder placed against an aluminum gutter may flip, twist, and slide). Krajewski's undisputed testimony, however, indicates that he knew and understood the specific danger at issue – that when hammering a metal hammer against a tool, there is a danger of chipping that could injure the eyes.

In a deposition, Krajewski testified that he had done similar repair work before, and that he knew that "there is a risk whenever you use a hammer on any piece of equipment or on any tool that there is a risk of something chipping off." (App. 215-16, 283). He agreed that this risk was why safety goggles are recommended, (*id*. at 283), that he had "most certainly" read the literature accompanying the pry bar, (*id*.

at 210), and that he was "sure" that the label on the pry bar said "wear safety glasses." (*Id.*). He further testified that "[t]he issue is not whether or not you should wear safety glasses or not. Safety glasses should be worn." (*Id.* at 255). Yet, despite his knowledge of the risk of chipping when he hammered on the pry bar and his awareness that this risk was the reason safety goggles should be worn, he testified that he "flat took them off and sat them down," (*id.* at 295), because the sun was setting, he was working underneath the side panel of the combine, and his safety goggles were tinted.

It is clear from Krajewski's testimony that he understood and appreciated the specific risk that hammering on the pry bar might cause chipping that could injure the eyes, and knew he should wear safety goggles to protect his eyes, but voluntarily chose to disregard this risk and remove his safety goggles. This is not a complex piece of machinery, whose dangers might not be readily apparent even to an experienced user, *see, e.g.*, *Rahmig*, 412 N.W.2d at 74-75, but a metal bar wielded by an experienced self-employed farmer, who owned and used numerous tools, including pry bars, and had taken several courses and seminars covering farm safety. Krajewski does not argue that this particular pry bar was any more dangerous than any other pry bar manufactured by Enderes or another manufacturer. In fact, the record supports the conclusion that this pry bar was comparable to other pry bars, (App. at 35-36, 54, 108, 121), and Krajewski admits that "[a]n exemplar pry bar to the subject pry bar chipped in just ten strikes of the same hammer Krajewski used on the date of the accident," and that "[o]ther, similar pry bars, manufactured by third-party manufacturers, chipped or cracked as well." (Appellant's Br. at 26). When Krajewski deliberately removed his goggles, he assumed the risk of eye injury. *See Hirschman*, 389 N.W.2d at 298-300 (granting summary judgment because it was clear from the testimony of the plaintiff, who had worked with rubber tarp straps many times and admitted knowing that the straps were made of rubber and might snap back and hit him if he did not handle them carefully, "that he appreciated the risks involved with using rubber straps" and "assumed the risk of his actions").

For similar reasons, Krajewski's claim fails under the rule in Nebraska, applicable to both negligence and strict liability, that an allegedly inadequate warning must be the proximate cause of the plaintiff's injury. *Haag*, 589 N.W.2d at 328-330; *Hammond v. Neb. Natural Gas Co.*, 281 N.W.2d 520, 524 (Neb. 1979). If, despite deficient warnings, "a user is fully aware of the danger which a warning would alert him or her of, then the lack of warning is not the proximate cause of the injury." *Strong v. E.I. DuPont de Nemours Co.*, 667 F.2d 682, 688 (8th Cir. 1981); *see also Hammond*, 281 N.W.2d at 524. As discussed, Krajewski was already fully aware of the specific danger to which this warning would alert him – *i.e.*, the danger that pounding one metal tool on another would cause chipping that could injure the user's eyes. Any alleged failure to warn could not have been the proximate cause of the injuries, because Krajewski knew of the hazards and chose to disregard them. *See Peitzmeier*, 97 F.3d at 300 (holding it "beyond cavil" that an inadequate warning was not the proximate cause of plaintiff's injuries where he was an experienced mechanic familiar with tire changer who testified that he had read all of the warning labels and still chose to exceed the service pressure rating on the tires); *Strong*, 667 F.2d at 688.

The judgment of the district court is affirmed.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. The court today affirms summary judgment on a record that fails to demonstrate that Krajewski knew of the specific danger that striking a hammer against the Enderes pry bar on its first use would cause chipped metal to fly into his eye.

To invoke the assumption of risk defense under Nebraska law, the defendant must show that the plaintiff knew of and understood the specific danger of the activity undertaken. Burke v. McKay, 679 N.W.2d 418, 424 (Neb. 2004) (quoting Neb. Rev. Stat. § 25-21, 185.12). Awareness of the general risks posed by a type of product or

activity is not sufficient; the plaintiff must know of the specific danger posed by the particular activity or product at the time of use. See Pleiss v. Barnes, 619 N.W.2d 825, 829-30 (Neb. 2000) (holding assumption of risk inapplicable where evidence showed that plaintiff, who fell from ladder, knew the general danger that ladders could become shaky and fall but not that he knew that "this particular ladder" created a specific danger that it could "flip, twist, and slide"); Williamson v. Provident Group, Inc., 550 N.W.2d 338, 340 (Neb. 1996) (holding assumption of risk inapplicable where evidence showed that plaintiff, who fell while walking across parking lot where crushed limestone was scattered, knew the general danger of falling while walking but not that she knew the specific danger of walking across that parking lot in those particular circumstances); see also Burke, 679 N.W.2d at 424-25 (holding plaintiff, who was hurt by a horse in a rodeo, was aware of the specific danger where he previously had seen the particular horse he rode, "horse No. 18," rear up and flip on top of its rider rather than bucking like a typical rodeo horse).

At his deposition, Krajewski testified that he was aware that striking two metal tools together can cause one of them to chip and that this is a reason to wear safety goggles when working with tools. When asked if there is a risk "when you're hammering or tapping metal on metal that you'll have chips come from pieces of metal," Krajewski answered, "There is a risk in everything." Next, when asked whether he would agree that "whenever you use a hammer on any piece of equipment or on any tool . . . there is a risk of something chipping off," Krajewski replied, "Yes there is a risk." He agreed that this was why safety goggles are recommended and confirmed that he had read warnings on the pry bar packaging and on the hammer advising users to wear safety goggles. Enderes Tool Company, the district court, and now this court characterize Krajewski's concession that metal chips can fly whenever tools are struck together as awareness of the specific danger.

Krajewski's responses show that, at the time of his deposition, he was aware of the general danger that metal chips can fly when a hammer is struck against other

metal tools. There is evidence, however, that the Enderes pry bar was not intended to be a struck tool and posed a greater danger than other pieces of metal. Nebraska statute and case law thus required Enderes Tool to show that Krajewski was aware of the specific danger that metal chips would fly when he struck his hammer against that Enderes pry bar on its first use. See Pleiss, 619 N.W.2d at 830. Krajewski's deposition testimony does not accomplish this task. Perhaps Endres Tool's counsel was posing his questions broadly to generalize the characterization of the risk for greater benefit at trial. Nonetheless, Krajewski's affirmative response to the question of whether he knew that chips can fly "whenever you use a hammer on any piece of equipment or on any tool" does not establish that he was aware of the specific danger of metal chipping the first time he used the particular Enderes pry bar involved in his eye injury.

This issue should have been submitted to the jury and summary judgment is inappropriate.

_____