# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2028
_____

Ryan Davis; Anthony Crane

*Plaintiffs - Appellants*

v.

Simon Contractors, Inc., doing business as Ogallala Ready Mix & Block Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 8, 2024
Filed: September 16, 2024

_____

Before SMITH, KELLY, and KOBES, Circuit Judges.

_____

KELLY, Circuit Judge.

Ryan Davis and Anthony Crane appeal the district court's[1] judgment entered in favor of Simon Contractors, Inc., following a jury trial on their strict products

_____

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

liability and negligent failure to warn claims. Having jurisdiction under 28 U.S.C. §§ 1291 and 1332, we affirm.

## I.

 "We set forth the facts in the light most favorable to the jury's verdict." Hous. 21, L.L.C. v. Atl. Home Builders Co., 289 F.3d 1050, 1051 (8th Cir. 2002). On April 10, 2017, Davis called Simon Contractors and ordered wet ready-mix concrete to be delivered to his home for a 30-by-30-foot garage floor he was installing with the help of his friend Crane. Simon Contractors was to deliver the wet concrete and unload it from a concrete-truck chute. They were not hired to install it or help with Davis's project once the concrete left the chute. Davis did not use a separate contractor to install the concrete, but typically, if Simon Contractors suspected that a caller lacked experience with concrete, they would refer them to a contractor for help.

Davis was a tile salesman and distributor, and he had significant experience using a product called "thinset" to install tiles. Thinset contains the same type of cement as ready-mix concrete. Davis described it as "a dry powder, and you mix it up [with water] into kind of a [cement] paste" that is then "trowel[ed] onto the back of tiles" and then placed directly onto flooring or walls. Crane had experience with "hands-on manual labor" jobs, including using thinset. Both Davis and Crane had little, if any, experience installing concrete.

This was Davis and Crane's first "do-it-yourself" project working with wet concrete on a slab floor. To prepare, Davis "watched a YouTube video on how to . . . tie up the rebar and how to space it" to reinforce the concrete once it was poured. He also "bought a few finishing trowels" and two-by-fours, but he did not have "actual concrete [finishing] tools." Nor did he watch a video about working with wet concrete.

On April 12, 2017, the wet concrete was delivered to Davis's home in two separate truckloads. The first load arrived around 10 a.m. and was "a soupy mess" that came out of the chute in "two huge piles" in the middle of Davis's garage. Davis and Crane used shovels and five-gallon buckets to move the wet concrete to the back of the garage so that they could start their project as fast as possible before the concrete hardened. When the second truckload arrived around 12:30 p.m., the delivery driver noticed that Davis and Crane were still working with the concrete from the first driver's truckload, and it was firming up and becoming difficult to handle. The driver asked Davis if he wanted him to wait to pour the second load of wet concrete. Davis declined and instructed him to go ahead and pour it.

During this time, Davis was working on his hands and knees in the concrete, wearing jeans with a tear in one leg, a shirt, and sneakers. Crane was wearing ankle-high hiking boots and black pants. Neither of them was wearing the recommended personal protective equipment (PPE) in the concrete industry, such as rubber gloves and boots, to prevent the wet concrete from contacting their skin. They were working in the concrete with a wooden "hand trowel" and a garden-style "rock rake." At the time, their clothing did not appear soaked with wet concrete, and they did not ask the driver for advice on how to do the job or what PPE to wear.

After delivering the second load, the delivery driver handed Davis's fiancée—who was standing nearby while Davis and Crane were working—an invoice for each delivery. She signed one invoice indicating that she received it, obtained "yellow carbon copies" of both invoices, and paid for them. On each invoice and carbon copy, there was a warning at the very top in small print that read: "WARNING—IRRITATING TO THE SKIN AND EYES. Contains Portland Cement. Wear rubber boots and gloves. PROLONGED CONTACT MAY CAUSE BURNS. Avoid contact with eyes and prolonged contact with skin. In case of contact with skin or eyes, flush thoroughly with water. If irritation persists, get medical attention."

Davis and Crane continued working with the wet concrete until around 2:45 p.m., when Crane's feet started itching, and he left the garage to change his socks.

When Crane took off his shoes and socks, he discovered chemical burns on his feet and ankles. He immediately told Davis, who then removed his jeans and noticed he, too, had severe chemical burns on his legs. Davis was admitted to the burn unit at a hospital and received debridement of his wounds and skin grafts on his legs. Crane went to the emergency room but cared for his wounds at home. The record reflects that extensive medical care was required for their injuries.

Davis and Crane sued Simon Contractors. In their Complaint, they alleged that Simon Contractors was negligent for failing to warn them about the dangers of wet concrete and that the ready-mix concrete delivered was defective because it was not provided to them with a warning. Before trial, both parties filed motions in limine. Relevant to this appeal, Davis moved the court to exclude any evidence of his involvement in prior litigation. He argued it was irrelevant and unfairly prejudicial under Federal Rules of Evidence 401, 403, and 404(b). Davis was specifically referring to allegations of forgery against him that came out during trial on his former tile company's contract-based claim against another company, Porcelanosa.[2] Davis's fiancée was also involved in that litigation.

Simon Contractors resisted. It argued the prior litigation could come in under Federal Rule of Evidence 608(b) because it was probative "as it relates to the character for truthfulness of witnesses intended to testify," and it was relevant to

_____

[2]In Crew Tile Distribution, Inc. v. Porcelanosa, Davis's former tile company sued Porcelanosa, alleging a breach of an exclusive tile-distribution contract signed in 2009. 763 F. App'x 787, 789–90 (10th Cir. 2019). Porcelanosa claimed Davis forged the contract and counterclaimed for abuse of process and invalid contract. Id. at 791. Porcelanosa was allowed to introduce allegations of Davis's forgery on a separate contract with a different party at a different time. Id. The jury found in favor of Porcelanosa on the counterclaims and denied Davis's breach-of-contract claim. Id. at 791–92. Davis appealed, arguing the district court erred by admitting the allegations of forgery against him, in violation of Federal Rule of Evidence 404(b). Id. at 792–93. However, the court concluded that any error was harmless, as the allegedly forged agreement was only admitted for a non-propensity purpose, and Davis had not properly preserved error during trial. Id. at 794–95.

Davis's and his fiancée's credibility. The district court agreed and ruled Simon Contractors on cross-examination could "inquire" into events that occurred in prior litigation because it had demonstrated a "good faith basis" that Davis and his fiancée "demonstrated a character for untruthfulness . . . during the prior litigation at issue." The court reminded the parties "that this does not open the door to extrinsic evidence, relitigating a prior case, or a discussion of another court's assessment of any witness' credibility." It did not address Davis's counter arguments under Rules 403 or 404(b).

At trial, evidence was introduced about Davis's experience with cement mix products. Davis testified about his experience installing tile with thinset, working in tile sales and distribution, observing other people working with concrete, and helping family members with their small-scale concrete-installation projects. Crane testified about his experience installing tile, admitting that he had previously read a warning on a bag of thinset or grout that the product "may be an irritant" and would need to be rinsed off skin with water. But he did not recall reading anything about severe burns or the need to rinse it off immediately after contact.

Davis also testified about "a business dispute" that ended up being litigated in the Tenth Circuit. Crew Tile Distribution, 763 F. App'x at 789–91. Davis vaguely summed up that litigation as involving multiple "[b]ack and forth" claims and said that his tile company ultimately "won some and . . . lost some." Simon Contractors cross-examined Davis and asked whether he previously had been accused of forgery in a breach-of-contract suit. Davis objected, arguing the information was irrelevant and that Simon Contractors was "getting very, very close" to introducing extrinsic evidence and commentary about another case, in violation of Rule 608(b). The district court overruled the objection and reiterated its pretrial ruling that Simon Contractors could inquire into the forgery allegations on cross-examination, and that its questioning was within the confines of the court's order. It again did not address Davis's concerns under Rules 403 or 404(b).

Simon Contractors followed up by asking questions to impeach Davis, asserting that the "truth"—contrary to Davis saying he "won some" and lost some

claims—was that "[Porcelanosa] won on [its] counterclaims." Davis repeated that he won and lost some claims, and on redirect, further denied the allegations of forgery or having been charged with, or convicted of, forgery or perjury in the past.

A structural engineer testified on behalf of Simon Contactors that Davis failed to properly plan the construction of the 30-by-30-foot concrete slab in his garage, and that Simon Contractors had no obligation to warn him about wearing PPE or having the tools necessary to complete the project safely. The expert concluded, based on his view of the evidence, that Davis and Crane's injuries were caused by their failure to properly plan for the job and by the prolonged exposure to wet concrete. Additional witness testimony about the incident was introduced from both parties, including Davis's fiancée and the two Simon Contractors delivery drivers. After a five-day trial, the jury reached a unanimous verdict in favor of Simon Contactors on all claims.

II.

On appeal, Davis and Crane argue the district court erred by instructing the jury as to Simon Contractors' sophisticated user and assumption of the risk affirmative defenses under Nebraska law. In assessing whether a district court erred in its jury instructions, we look at the instructions "as a whole and viewed in light of the evidence and the applicable law," and determine whether they "fairly and adequately submitted the issues in the case to the jury." Barkley, Inc. v. Gabriel Bros., Inc., 829 F.3d 1030, 1042 (8th Cir. 2016) (quoting Fogelbach v. Wal–Mart Stores, Inc., 270 F.3d 696, 699 (8th Cir. 2001)); see Smith v. Chase Grp., Inc., 354 F.3d 801, 808 (8th Cir. 2004) (concluding that in diversity jurisdiction cases we look to the law of the forum state to decide whether jury instructions "fairly and adequately represent the law"). Unless there is an error in the instructions that prejudices the appealing party, or could have impacted the outcome of the case, reversal is not required. See Wilson v. City of Des Moines, 442 F.3d 637, 644 (8th Cir. 2006).

## A.

Davis and Crane argue the district court "misapprehended" Nebraska law on the availability of the sophisticated user defense. They assert that regardless of whether they knew or should have known about the danger of exposure to wet concrete, Simon Contractors still had a duty to warn them of its "inherently dangerous product," and its failure to do so could have been "another proximate cause [of their injuries]."

"A plaintiff can recover for a product defect under the theory of negligence or the theory of strict liability in tort." Vondra v. Chevron U.S.A., Inc., 652 F. Supp. 2d 999, 1005 (D. Neb. 2009) (citing Freeman v. Hoffman-La Roche, Inc., 618 N.W.2d 824, 845 (Neb. 2000)). A product may be defective if the manufacturer sells it without sufficient warnings or instructions. Haag v. Bongers, 589 N.W.2d 318, 329 (Neb. 1999). Under Nebraska law, to recover on a theory of negligence or strict products liability based on a defective warning theory, a plaintiff must prove, among other things, that a warning defect proximately caused their injury while the product was being used as intended, and "the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use." Vondra, 652 F. Supp. 2d at 1005 (quoting Krajewski v. Enderes Tool Co., 469 F.3d 705, 708–10 (8th Cir. 2006)); see also Freeman, 618 N.W.2d at 570.

Nebraska has long recognized the sophisticated user defense to a warning-defect claim. This defense provides that "there is no duty to warn if the user knows or [reasonably] should know of the potential danger, especially when the user is a professional who should be aware of the characteristics of the product." Vondra, 652 F. Supp. 2d at 1006 (quoting Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 687 (8th Cir. 1981)). That is so, because when "a user is fully aware of the danger which a warning would alert him or her of, then the lack of warning is not the proximate cause of the injury." Strong, 667 F.2d at 688.

The district court instructed the jury that it must decide if "[t]here [was] no duty to warn" because Davis and Crane were sophisticated or professional users who knew or should have known of the dangers of exposure to wet concrete. Accordingly, it instructed the jury that, to prevail on its defense, Simon Contractors had to establish:

> *One*, the Plaintiff in question already knew or reasonably should have known, because it was common knowledge, that wet Ready-Mix Concrete can cause chemical burns; *OR Two*, the Plaintiff in question was a professional user of Ready-Mix Concrete who should have been aware of the characteristics of Ready-Mix Concrete, including the danger that wet Ready-Mix Concrete can cause chemical burns.

It is true that there was no evidence indicating Davis or Crane had prior experience with wet concrete "at [the] caliber" of the garage project. But Davis specifically testified about his experience installing wall and floor tile with thinset, which contains the same type of cement as ready-mix concrete. Furthermore, according to Simon Contractors' expert, it is "common industry practice" that when concrete is ordered, the supplier assumes "the purchaser has some basic knowledge of concrete and would have the proper equipment and PPE to protect themselves from the caustic burns." The jury was able to weigh all contrary evidence at trial and find that, given their experience tiling, working with smaller quantities of cement-based products, and observing others working with cement and concrete, Davis and Crane knew or should have known of the dangers of wet concrete such that no additional warning was required. See Vondra, 652 F. Supp. 2d at 1005. The district court's decision to use a sophisticated user instruction was supported by the evidence, and we see no error in the court's interpretation of Nebraska law.

B.

Next, Davis and Crane challenge the assumption of the risk jury instruction, arguing that Simon Contractors failed to prove they subjectively knew of the danger posed by wet concrete, and thus, could not have assumed the risk. Even if a product

-8-

warning is inadequate, a plaintiff will "still be barred from recovery if [they] assumed the risk of [their] injury." See Krajewski, 469 F.3d at 709; see also Neb. Rev. Stat. § 25-21, 185.12 (codifying the assumption of the risk affirmative defense). "[K]nowledge of a general danger or hazard is insufficient" to conclude a plaintiff assumed the risk. Krajewski, 469 F.3d at 709. Rather, there must be "proof that a plaintiff had knowledge of a specific danger and deliberately exposed himself to the danger." Id. (citation omitted).

The district court instructed the jury that to defeat a claim of negligence or strict products liability, Simon Contractors had to establish that:

> *One*, the Plaintiff in question knew of and understood the danger of chemical burns from wet Ready-Mix Concrete; *Two*, that Plaintiff voluntarily and unreasonably exposed himself to that danger by failing to wear proper attire to handle wet Ready-Mix Concrete; and *Three*, that Plaintiff's injury occurred as a result of his exposure to that danger.

We see no error in the court's decision to provide this instruction. As we addressed above, a jury could reasonably find that Davis and Crane knew of the specific danger posed by wet concrete. The structural engineer's testimony supports the conclusion that they deliberately exposed themselves to that danger. Specifically, the engineer testified that Davis and Crane undertook "a substantial project" that requires significant planning and "at a minimum four to six [workers] to do it properly and to do it safely," and did so without "the proper concrete tools to move [or finish] the concrete" or the proper PPE to stand or kneel in wet concrete for an extended period of time.

The jury also heard testimony that the first delivery driver mentioned to them earlier that morning that they "didn't have the right equipment," they were unprepared, and they "might want to wear rubber gloves or boots." And the structural engineer testified that Davis and Crane had access to warnings that discussed these very dangers. The engineer testified the written warning here was "standard" for the type of concrete used and would be the same warning found on "a bag of tile grout

or mortar" and "basically on every document that you see that has anything to do with concrete." The engineer further testified that had Davis and Crane, at a minimum, "read and taken seriously" the warning on the carbon copies of the invoices provided to them after the second delivery driver left, they would have known to avoid any additional exposure to wet concrete and that they should immediately rinse any off with water. This testimony, as well as the evidence of their experience in the industry, support a conclusion that Davis and Crane understood these warnings and thus knew of the dangers. The district court did not err in providing the assumption of risk instruction.

III.

Finally, Davis and Crane appeal the district court's decision to allow Simon Contractors to cross-examine Davis about a prior civil lawsuit to which he was a party. "We review a district court's evidentiary rulings for an abuse of discretion." Valadez v. Watkins Motor Lines, Inc., 758 F.3d 975, 980 (8th Cir. 2014) (citing United States v. Pirani, 406 F.3d 543, 555 (8th Cir. 2005) (en banc)). "Where we find an abuse of discretion, we must then determine whether the error was harmless." Id. (citation omitted). An error is harmless when it does "not have a 'substantial influence' on the jury's verdict." Id. (quoting Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995)).

The district court ruled that this line of questioning was permissible pursuant to Rule 608(b). Under Rule 608(b), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."[3] Fed. R. Evid. 608(b). On cross-examination, however,

---

[3]In 2003, the Rule was amended to replace the term "credibility" with the term "character for truthfulness" to "conform the language of the Rule to its original intent, which was to impose an absolute bar on extrinsic evidence only if the sole purpose for offering the evidence was to prove the witness' character for veracity." Fed. R. Evid. 608(b) advisory committee's note to 2003 amendment.

the court may "allow [these instances] to be inquired into if they are probative of the [witness's] character for truthfulness or untruthfulness." Id. The cross-examiner ordinarily "must take the answer" the witness provides and "cannot use 'extrinsic evidence to prove that the specific bad acts occurred.'" United States v. Grandison, 781 F.3d 987, 992 (8th Cir. 2015) (quoting United States v. Martz, 964 F.2d 787, 789 (8th Cir. 1992)). Rule 608(b) also remains subject to Rule 403 balancing. See Fed R. Evid. 403 (excluding otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice"); King v. Ahrens, 16 F.3d 265, 269 (8th Cir. 1994) ("The Rule 403 balancing of probative value versus prejudicial effect is an integral step toward a determination of admissibility under either Rule 404(b) or Rule 608(b).").

As a preliminary matter, the district court found that, under Rule 608(b), Simon Contractors had a good faith basis to ask whether Davis had committed forgery. See United States v. Craig, 953 F.3d 898, 903 (6th Cir. 2020) ("[A] questioner may ask about specific instances of conduct to attack a witness's credibility, but only if the questioner has a good faith basis that the instance actually occurred."); Kenneth S. Bourn, et al., Character: Misconduct, for which there has been no criminal conviction, 1 McCormick on Evid. § 41 (Robert P. Mosteller ed., 8th ed. 2022) ("[T]he cross-examiner may not pose the question unless she has a good faith basis in fact for the inquiry."). As a result, it was permissible to ask Davis, "Did you commit forgery?" because that question inquired into a specific act that went to Davis's character for truthfulness. See Martz, 964 F.2d at 789 ("Rule 608(b) gives the court discretion to allow questioning during cross-examination *on specific bad acts* . . . if those acts concern the witness' credibility.").[4]

---

[4]If Davis denied the forgery, Rule 608(b)'s bar on extrinsic evidence would have prohibited calling a third-party witness to the stand to contradict his denial, see, e.g., United States v. Bussey, 942 F.2d 1241, 1253 (8th Cir. 1991); see also Braun, 1 McCormick on Evid. § 41 (explaining that the bar on extrinsic evidence "means that the cross-examiner may not later call other witnesses to prove the discrediting acts"), or introducing documentary evidence to establish the prior conduct, see

Here, however, Simon Contractors asked Davis a series of questions about the prior litigation that went further, including whether the opposing party had accused him of forgery and whether "the ruling of th[e] court" was that he had "forged those documents."[5] On appeal, Davis and Crane do not assert that this additional line of questioning exceeded the bounds of Rule 608(b).[6] Rather, they argue that it was impermissible because it was more prejudicial than probative. See Fed. R. Evid. 403, 404(b); Batiste-Davis v. Lincare, Inc., 526 F.3d 377, 380–81 (8th Cir. 2008). Recognizing the testimony's potential for prejudice, we conclude that any error in permitting this line of cross-examination was harmless. Davis rehabilitated himself on redirect. See Batiste-Davis, 526 F.3d at 381 (finding only harmless error when

---

Martz, 964 F.2d at 788–89 (finding district court did not abuse its discretion in refusing to admit a document to prove a specific bad act occurred).

[5]Simon Contractors also asked Davis whether his fiancée was the only one "to corroborate [his] version" of events. The district court sustained Davis's objection to this question.

[6]To the extent that Simon Contractors offered the court's "ruling" in the prior litigation as "the consequences" that resulted from the alleged forgery, the Advisory Committee notes to Rule 608(b) provide guidance:

> It should be noted that the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act. For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness.

Fed. R. Evid. 608(b) advisory committee's note to 2003 amendment. And both this question and Simon Contractors's question about the accusation of forgery by a third person—the opposing party in the prior litigation—arguably contain embedded hearsay. See United States v. Davis, 183 F.3d 231, 257 n. 12 (3d. Cir. 1999) ("Tucking a third person's opinion about prior acts into a question asked of the witness" puts hearsay before the jury and runs the risk of allowing a mini-trial on the prior conduct (citation omitted)).

plaintiff had opportunity to address wrongly admitted issue on redirect). And the probative questions at trial were whether Davis and Crane knew, or should have known, about the caustic properties of wet concrete and the need for PPE. The evidence on these issues, including their professional experience, was largely undisputed. On the trial record, any error in allowing this attack on Davis's credibility would not have had a substantial impact on the jury's verdict. See Valadez, 758 F.3d at 980 ("An error is harmless if we find that the error did not have a 'substantial influence' on the jury's verdict." (quoting Peterson, 60 F.3d at 475)).

IV.

We grant Davis and Crane's motion to supplement or complete the record, and we affirm the judgment of the district court.

_____